COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Humphreys and Petty
Argued at Richmond, Virginia


DAVID SMITH

OPINION BY
v.       Record No. 0422-09-1                    JUDGE ROBERT J. HUMPHREYS
                                                 JUNE 15, 2010
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Johnny E. Morrison, Judge

S. Jane Chittom, Appellate Defender (Office of the Appellate
Defender, on briefs), for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General
(William C. Mims, Attorney General, on brief), for appellee.


BACKGROUND

Following the trial court's denial of his motion to suppress,[1] David Smith ("Smith")

entered into an agreement to plead guilty to abduction and forcible sodomy on July 24, 2008.  As

part of that agreement, Smith reserved the right to appeal the trial court's denial of his motion.

Smith timely filed both his notice of appeal and petition for appeal, but failed to file the

transcript from his suppression hearing in the trial court within sixty days after entry of final

judgment, as required by Rule 5A:8.  Consequently, the transcript for Smith's suppression

hearing is not properly before this Court.

In his petition for appeal, Smith argued that the proper remedy for this Court to apply

under these circumstances was to dismiss the appeal for failure to file an indispensable transcript.

In fact, before Smith's petition for appeal was granted, he filed a separate motion to dismiss his

_____

[1] Judge James C. Hawks heard the motion to suppress.

own appeal on those grounds. Smith argued that, absent the suppression-hearing transcript, this Court lacked jurisdiction to decide the merits of his appeal. A three-judge panel of this Court granted Smith's petition for appeal, held his motion to dismiss in abeyance, and instructed the parties to brief whether the appropriate remedy for the failure to timely file an indispensable transcript is to deny the petition for appeal or dismiss the appeal.

In response, Smith argues that the proper remedy for a failure to file an indispensable transcript is to dismiss the appeal while the Commonwealth contends that the failure to provide a sufficient record should simply result in the denial of a petition for appeal. Given our Supreme Court's holding in Jay v. Commonwealth, 275 Va. 510, 659 S.E.2d 311 (2008), we hold that Smith's failure to comply with the provisions of Rule 5A:8 is a violation of a non-jurisdictional, though mandatory requirement of the Rules governing the processing of appeals in this Court. Thus, Smith's failure to present an adequate record sufficient to review the merits of the issues and arguments he presents on brief constitutes a waiver of his question presented and supporting argument. Accordingly, we deny Smith's motion to dismiss and affirm the decision of the trial court on that basis.

ANALYSIS

At the onset, we note that this appeal is more than a bit peculiar in light of the fact that Smith simultaneously filed in this Court both a petition to appeal his convictions for abduction and forcible sodomy and a motion to dismiss that very appeal. Smith asserts that he did so in order to attempt to avail himself of the provisions of Code § 19.2-321.1. He argues that, if applicable, Code § 19.2-321.1 may allow him to pursue a delayed appeal and, thus, overcome his

failure to file the transcript of his suppression hearing as part of the trial court record, which he concedes is indispensable to our resolution of the merits of his appeal.[2]

Prior to its decision in Jay, both our Supreme Court and this Court have historically dismissed appeals when the mandatory requirements of the Rules have not been adhered to, including those cases in which a transcript, indispensable to the resolution of the issue, had not been filed in the trial court. See Fearson v. Commonwealth, 211 Va. 256, 176 S.E.2d 921 (1970); Crum v. Udy, 206 Va. 880, 146 S.E.2d 878 (1966); Smith v. Commonwealth, 32 Va. App. 766, 531 S.E.2d 11 (2000); Price v. Price, 17 Va. App. 105, 435 S.E.2d 652 (1993); Turner v. Commonwealth, 2 Va. App. 96, 341 S.E.2d 400 (1986). In our view, this practice of dismissing, rather than denying, non-compliant petitions for appeal has always been problematic, since the very nature of the petition process mandated by statute contemplates that unless the petition for appeal is granted, there is no need to act on it in any other way than simply denying the petition. It is certainly true that once a petition for appeal or for certiorari has been granted, and in those cases where a petition is unnecessary because an appeal lies as a matter of right, appeals are almost invariably dismissed when an appellate court lacks jurisdiction over the subject matter or the parties. However, in other jurisdictions, the converse is not necessarily true, and the practice of dismissing appeals on non-jurisdictional grounds is not at all unusual

---

[2] It is not a given that by dismissing his appeal, Code § 19.2-321.1 would apply to this situation. Code § 19.2-321.1 only permits a motion to file a delayed appeal when an appeal has "been dismissed for failure to adhere to proper form, procedures, or time limits in the *perfection of the appeal* as required by law or by the Rules of the Supreme Court." (Emphasis added). It is arguable whether a violation of Rule 5A:8 relates to the perfection of an appeal. Rules 5A:7 and 5A:8 are silent as to the manner and form by which an appeal is *perfected* to this Court, but rather relate strictly to the contents of the record in the trial court which, when forwarded to this Court, will simply frame the context of this Court's decision. Indeed, the Amendments to Part 5A of the Rules of the Supreme Court adopted on April 30, 2010 and effective on July 1, 2010 make this distinction by placing those Rules applicable to the preparation of the record in a different subsection from those Rules which relate to the "Perfection of the Appeal" found in Section E of Part 5A of the amended Rules.

among our sister appellate courts.[3] Nevertheless, our Supreme Court adopted a different position in Jay, and its holding in this regard is both final and binding on this Court.

The holding of Jay could hardly be clearer, "[b]y *dismissing* rather than *denying* the appeals, the Court of Appeals rendered the requirements of Rule 5A:20(e) jurisdictional." 275 Va. at 517, 659 S.E.2d at 315 (emphasis in original).[4] While it is true that Jay specifically refers to Rule 5A:20(e), if the term "jurisdictional" has any consistent meaning, we see no rational reason why this principle should not also apply to Rule 5A:8.[5] Jay commands that we not

---

[3] Appellate courts in other jurisdictions, including the United States Supreme Court, routinely dismiss appeals where: the issue is moot, the appeal has been improvidently granted, or as here, the record is so incomplete as to prevent the Court's proper consideration of the issue. See e.g. Christian Civic League of Me., Inc. v. FEC, 549 U.S. 801 (2006) (dismissing as moot); Gilligan v. Sweetenham, 405 U.S. 949 (1972) (noting probable jurisdiction, but dismissing as moot); see also United States v. Dula, 989 F.2d 772 (5th Cir. 1993) (dismissing defendant's Brady claim for failure to provide a record). The term "dismissed," in the context of an appeal, is used elsewhere as a generic dispositional term indicating that a party failed to put the appeal in a posture such that the issues can be reached and resolved by the appellate court. Thus, in many other jurisdictions, the dismissal of an appeal has no inherent jurisdictional implications.

[4] Notably, in concluding in Jay that a dismissal rendered a rule violation jurisdictional, the Supreme Court expressly stated that "to hold otherwise would mean that, if an appellant did not list cases alphabetically in the table of citations as required by Rule 5A:20(a), dismissal of the appeal would be mandated as a jurisdictional matter." Jay, 275 Va. at 520, 659 S.E.2d at 317. Yet curiously on April 30, 2010, the Supreme Court of Virginia adopted comprehensive amendments to its Rules which, contrary to the holding in Jay, permit, and in some cases require the *dismissal* of a petition for appeal for failure to comply with various Rules including, among other things, the failure to file a compliant table of contents or authorities. See Rule 5A:26 ("If an appellant fails to file a brief in compliance with these Rules, the Court of Appeals *may dismiss* the appeal."); see also e.g. Rule 5A:12(c)(1)(ii) ("If the assignments of error are insufficient or otherwise fail to comply with the requirements of this Rule, the petition for appeal *shall be dismissed*.") (Amendments to Part 5A of the Rules of the Supreme Court of Virginia adopted April 30, 2010 and effective July 1, 2010) (emphasis added). Since Jay expressly holds that deficient briefs and other rule violations which are readily curable are not jurisdictional and, thus, ought not result in dismissal of an appeal, the plain language in the amended Rules would seem to be in clear conflict with the holding of Jay and, thus, it may well be that when effective, these amended Rules will have the effect of overruling Jay. However, that is a decision for another day.

[5] Rule 5A:20(e) requires the appellant to provide this Court, in his opening brief, the principles of law, argument, and legal authority relating to his questions presented. Rule 5A:8 requires the appellant to file the transcript in the trial court within sixty days after entry of final

dismiss an appeal except on the grounds that this Court lacks jurisdiction, and thus, the

resolution of the issue before us turns on the meaning of the term "jurisdictional," as used in Jay.

"Jurisdiction is a term which can engender much confusion because it encompasses a

variety of separate and distinct legal concepts." Porter v. Commonwealth, 276 Va. 203, 228, 661

S.E.2d 415, 426 (2008). Undeniably, "'[j]urisdiction is a word of many, too many, meanings.'"

Ghameshlouy v. Commonwealth, 279 Va. 379, 388, 689 S.E.2d 698, 702 (2010) (quoting

Ghameshlouy v. Commonwealth, 54 Va. App. 47, 57, 675 S.E.2d 854, 859 (2009) (Haley, J.

dissenting)). That said, "[c]ourts cannot take or grant jurisdiction *where the legislature or a*

*constitution has not given it*." Swalef v. Anderson, 50 Va. App. 100, 106 n.4, 646 S.E.2d 458,

461 n.4 (2007) (emphasis added). See also Bd. of Supervisors v. Bd. of Zoning Appeals, 271

Va. 336, 344, 626 S.E.2d 374, 379 (2006); Humphreys v. Commonwealth, 186 Va. 765, 772-73,

43 S.E.2d 890, 894 (1947); accord Morrison v. Bestler, 239 Va. 166, 169, 387 S.E.2d 753, 755,

(1990). It follows then that a rule of court cannot convey or limit jurisdiction.[6]

> Indeed, a court refusing to exercise its jurisdiction or erroneously
> limiting its jurisdiction, precludes the parties from being able to
> litigate an issue as surely as if the court was without jurisdiction.

judgment, thereby making the transcript a part of the record. In other words, Rule 5A:20(e)
requires that an appellant provide this Court with the issues he wants us to resolve and the
arguments and legal authority he asserts to support his position, while Rule 5A:8 relates to the
contents of the trial court record we are to use in that endeavor. If we were to adopt the dissent's
reasoning, we would create a conflict in our own jurisprudence by ignoring the fact that this
Court recently held that the failure to file a transcript indispensable to the resolution of the merits
of the appeal, operates as a waiver of the issue. Shiembob v. Shiembob, 55 Va. App. 234, 246,
685 S.E.2d 192, 198-99 (2009) ("Because the arguments raised by husband are wholly contained
within the untimely-filed transcript and are indispensable to the determination of this issue, this
question is waived on appeal").

[6] We disagree with the position of the dissent that the General Assembly has somehow
implicitly ceded to the Supreme Court of Virginia its authority to create or limit the jurisdiction
of the Commonwealth's courts.

> Although *a court cannot confer jurisdiction upon itself*, it does have the power to determine whether it has jurisdiction.

Gibson v. Gibson, 5 Va. App. 426, 433, 364 S.E.2d 518, 522 (1988) (emphasis added).

The appellate courts of the Commonwealth are not alone in promulgating confusing jurisprudence on this issue. In Kontrick v. Ryan, 540 U.S. 443, 453 (2004), the United States Supreme Court recognized that it has created similar confusion in the federal arena, noting that it had been "less than meticulous" in its use of the term "jurisdictional" to describe timeliness requirements. The Supreme Court then observed that "[i]t is axiomatic that court-prescribed rules of practice and procedure, as opposed to statutory time limits, *do not create or withdraw . . . jurisdiction*." Id. (emphasis added). Again in Bowles v. Russell, 551 U.S. 205, 210-12 (2007), the Supreme Court noted that

> [a]lthough several of our recent decisions have undertaken to clarify the distinction between claims-processing rules and jurisdictional rules, none of them calls into question our longstanding treatment of *statutory* time limits for taking an appeal as jurisdictional. Indeed, those decisions have also recognized the jurisdictional significance of the fact that a time limitation is set forth in a *statute*.

(Emphasis added). In other words, the term "jurisdiction" refers to mandatory requirements prescribed by constitution or statute as a prerequisite to a court taking a case for resolution. What the United States Supreme Court characterizes as "claim-processing" requirements relate to those non-jurisdictional, but nonetheless mandatory, "procedural rules adopted by the Court for the orderly transaction of its business" that are "*not jurisdictional*." Kontrick, 540 U.S. at 454 (quoting Schacht v. United States, 398 U.S. 58, 64 (1970)) (emphasis added).

This is precisely the situation represented in this case. No rule of court actually conveys, expands or restricts the "jurisdiction" of the courts of the Commonwealth. The Rules of the Supreme Court of Virginia are promulgated under the statutory authority of that Court to "prescribe the forms of writs and make general regulations for the practice in all courts of the

Commonwealth; and [] prepare a system of rules of practice and a system of pleading and the forms of process." Code § 8.01-3. Perhaps our Supreme Court will at some point elect to bring the same level of clarity to the term "jurisdiction" that the Supreme Court of the United States has in the federal arena in Kontrick, but in the meantime, after engaging in the exercise our Supreme Court referred to in Ghameshlouy as "plumb[ing] the murky depths of the sea of 'jurisdiction,'" 279 Va. at 388, 689 S.E.2d at 702, we hold Smith's failure to file the transcript from his suppression hearing was a violation of a non-jurisdictional, though nonetheless mandatory, requirement of a rule of court.

Here, the flavor of "jurisdiction" that the dissent finds is implicated by Rule 5A:8 is what it describes as "authority jurisdiction." The dissent uses this term as shorthand for its conclusion that a Rule limiting this Court's authority to proceed to a decree is by definition jurisdictional. The dissent's conclusion would dramatically expand the concept of "jurisdiction" while simultaneously making it more amorphous than ever. Moreover, this conclusion would undermine the recent attempts of our Supreme Court to bring at least some measure of order out of what has long been "jurisdictional" chaos.

In Ghameshlouy, the Supreme Court parsed the term "jurisdiction" into what it termed as "potential jurisdiction," which encompassed:

> subject matter jurisdiction, which is the authority granted through constitution or statute to adjudicate a class of cases or controversies; territorial jurisdiction, that is, authority over persons, things, or occurrences located in a defined geographic area; notice jurisdiction, or effective notice to a party or if the proceeding is *in rem* seizure of a *res*; and *the other conditions of fact must exist which are demanded by the unwritten or statute law* as the prerequisites of the authority of the court to proceed to judgment or decree

and "active jurisdiction" which it described as the actual "power to adjudicate a case on the merits." Ghameshlouy, 279 Va. at 388-89, 689 S.E.2d at 703 (quoting Bd.of Supervisors, 271

- 7 -

Va. at 343-44 & n.2, 626 S.E.2d at 379 & n.2) (emphasis added). The Supreme Court's parsing of the term "jurisdiction" in this manner indicates, in our view, that it intended to convey that the terms "power" and "authority" are not synonymous and that the "authority" of a court to act is dependent upon it having subject matter jurisdiction, personal jurisdiction over the parties, and territorial jurisdiction, as required by the constitution or statute. On the other hand, even where a court has the requisite subject matter, territorial, and personal jurisdiction over the parties, its "power" to actually reach the merits of a case depends upon compliance by the parties with any and all mandatory requirements imposed by the rules of court. Moreover, if as the dissent suggests, the term "conditions of fact demanded by unwritten and statute law" includes the written rules of court, there would be no need for our Supreme Court to create the second category of what it calls "active jurisdiction."

The dissent cites Rule 1:1 as an example of this concept of "authority jurisdiction." We certainly must concede that as recently as its decision in City of Suffolk v. Lummis Gin Company, 278 Va. 270, 683 S.E.2d 549 (2009), our Supreme Court characterized Rule 1:1 as a limitation on the exercise of a court's "jurisdiction." However, a review of the Supreme Court's more comprehensive discussions of the concept of jurisdiction found in Ghameshlouy, Porter, Nelson v. Warden, 262 Va. 276, 552 S.E.2d 73 (2001), and Moore v. Commonwealth, 259 Va. 431, 437, 527 S.E.2d 406, 409 (2000), strongly suggests to us that its usage of the term "jurisdictional" in Lummis Gin Co. is simply another example of its use of this term as inartful shorthand for what in reality is more accurately described as a mandatory "claims-processing rule," the term now used by the United States Supreme Court. Given the basic premise that a rule of court may limit a court's power to act but cannot create or limit a court's jurisdiction, in our view, the mandatory time limits contained in the Rules of the Supreme Court, including Rule 1:1, are more properly viewed as regulatory in nature rather than "jurisdictional" in the strict

sense of that word.[7]  We respectfully suggest that it does no service to the jurisprudence of the

Commonwealth to continue to use the term "jurisdictional" to describe what are more accurately

---

[7] The dilemma both the dissent and we face involves the reconciliation of facially irreconcilable precedent from our Supreme Court.  While the Supreme Court of Virginia in recent years has taken some steps toward refining the concept of "jurisdiction" to its original meaning as "[a] court's power to decide a case or issue a decree," Black's Law Dictionary 867 (8th ed. 2004), as the dissent correctly points out, in other cases our Supreme Court has used the word "jurisdictional" to apply to several of the mandatory requirements of various rules of court. See Dudley v. Florence Drug Corporation, 204 Va. 533, 535, 132 S.E.2d 465, 467 (1963) ("We have repeatedly held that Rule 5:1, § 3(e) and (f), is mandatory and jurisdictional and a failure to comply with it is fatal to an appeal.  Here the plaintiff has flagrantly violated the mandatory requirements of Rule 5:1, § 3(e) and (f), in that the transcript of the oral testimony and other incidents of trial was not tendered to the court below within 60 days after final judgment.  Such lack of compliance with the Rule is fatal to the jurisdiction of this Court.  Accordingly, the motion to dismiss the writ of error is sustained, the effect of which is to affirm the judgment of the court below." (internal citations omitted)); see also Towler v. Commonwealth, 216 Va. 533, 535, 221 S.E.2d 119, 121 (1976) ("These are simple, easily understood rule provisions.  But they are jurisdictional, and failure to comply therewith will result, as in the present case, in dismissal, either before or after appeal is awarded.").

Given the apparent conflict between the language used in these cases with the principle, acknowledged by our Supreme Court, that jurisdiction must flow from the authority of the constitution or statute and its corollary that a rule of court may not convey or limit a court's jurisdiction although it may limit its ability to act, we believe that the use of the word "jurisdictional" in the cases relied upon by the dissent is simply an inartful synonym for the mandatory procedural requirements which regulate the manner in which a court exercises its power – not its jurisdiction.  In other words, the legislature determines "jurisdiction," i.e. the generic power of a court to act at all, under what circumstances, and which court is appropriate for the resolution of various types of cases and controversies.  Conversely, the Supreme Court of Virginia, through its statutory grant of rulemaking authority, determines the mandatory or discretionary procedural steps necessary as a prerequisite to process, in an orderly fashion, those cases in the various courts in which they have jurisdiction to act.  However, in doing so, the Supreme Court does not, and indeed may not, limit the actual jurisdiction of the courts.  Put another way, a court may be unable to act because it has no jurisdiction over the subject matter or the parties in the first place, or it may be unable to act, even where the court has jurisdiction, due to a failure to satisfy mandatory procedural requirements deemed essential to an orderly and expeditious resolution of the case.

To use the dissent's example, by its plain language, we believe Rule 1:1 does not limit a court's "jurisdiction," but rather limits the *power* of a court, which already has jurisdiction, to modify its final order more than 21 days after its entry.  Thus, Rule 1:1 is better understood to be an exercise of our Supreme Court's constitutional and statutory authority to regulate the judicial system by fixing a mandatory time certain when a case is finally considered concluded in a court with jurisdiction.  Such bright-line finality is necessary so that either the prevailing party can enforce a judgment or an aggrieved party can seek relief in a higher court, and Rule 1:1 simply regulates the point in time at which this takes place.

described as emphatic time prescriptions in the rules of court designed to superintend and facilitate the orderly and prompt resolution and disposition of matters before the courts of the Commonwealth.

Furthermore, we also disagree with the dissent's application of its concept of "authority jurisdiction" to Rule 5A:8. By way of analogy, no one would seriously contend that the failure of an appellant to preserve an alleged error by complying with the contemporaneous objection requirements of Rule 5A:18 deprives this Court of either the authority or ability to decide the case on appeal – we simply may not be able to decide it on the merits where the record is silent that the error was preserved for appeal. The same is true here. The failure of a party to file a transcript does not affect our *authority* to decide the case one whit. We clearly have the authority and thus, even under the analysis of the dissent, the "jurisdiction" to do so and indeed, we routinely fulfill our obligation to decide the merits of appeals when a transcript has not been filed, if the issue is one that can be resolved without it. Since there is no precedent for a "jurisdictional" defect to operate selectively, it seems axiomatic to us that if the failure to file a transcript denied this Court the authority to exercise its appellate jurisdiction, this would necessarily be true in *every* case where the trial court record lacked a transcript, including those cases that may not require a transcript for resolution of the issue presented. As noted above, Rules 5A:7 and 5A:8 have nothing whatsoever to do with the mandatory requirements for "perfecting" an appeal. Rule 5A:7(a)(7) simply includes a transcript in the definition of the trial court record to be considered by this Court on appeal, and Rule 5A:8 specifies that this occurs when the transcript is filed in the office of the clerk of the trial court within 60 days after entry of

---

As discussed above, on the facts of this case, this distinction makes a practical difference in the Commonwealth only because Jay holds that a dismissal of a case constitutes a determination that this Court lacks jurisdiction.

the final judgment. Neither Rule 5A:7 nor Rule 5A:8 implicates our authority to decide a case on appeal. Appeals are decided based upon the contents of the record of the trial court, whatever the quality or degree of completeness of that record, either on the merits or based on a procedural infirmity that prevents this Court from reaching the merits.[8]

Accordingly, given the clear mandate of Jay that we may not dismiss an appeal on other than jurisdictional grounds, we hold that Smith's failure to comply with Rule 5A:8 constitutes a violation of a non-jurisdictional rule requirement. By not filing the transcript of the suppression hearing, which Smith concedes is indispensable to the resolution of his appeal, Smith deprived this Court of an adequate record to address the issue he presents. Thus, we deny Smith's motion to dismiss his appeal, treat the underlying issue as waived, and affirm the trial court on that basis.

Affirmed.

---

[8] Since it is obvious that in order to dismiss an appeal, there has to be a case before us to dismiss, and since Code § 17.1-407 contemplates a petition process in criminal cases in which the case is not further acted upon by this Court unless a petition for appeal is granted, at least one presumably unintended consequence of the dissent's position is that this Court would be required to grant, rather than deny, every petition for appeal in which a transcript has not been filed in the trial court as a prerequisite for considering the case for later dismissal.

Petty, J., dissenting.

Despite the majority's attempt to redefine the question before us, the issue is really quite simple: is a failure to make an indispensable transcript part of the record a jurisdictional defect that requires dismissal of the appeal? Over a quarter of a century ago, our Supreme Court answered that question with clear, unambiguous, and unequivocal language. The Court said,

> [W]e must *dismiss* the writ as improvidently awarded. We take the occasion . . . to reiterate the *jurisdictional* nature of [former] Rule 5:9 and to reemphasize the necessity of compliance with its mandatory requirements.
>
>       \*        \*        \*        \*        \*        \*        \*
>
> These are simple, easily understood rule provisions. But *they are jurisdictional*, and failure to comply therewith will result . . . in *dismissal*, either before or after appeal is awarded. We dislike dismissing appeals for *jurisdictional defects* even where, as here, we would likely affirm the judgment of the trial court. Dismissal is especially unpalatable, however, where the correctness of a ruling below is apparent.

Towler v. Commonwealth, 216 Va. 533, 534-35, 221 S.E.2d 119, 120-21 (1976) (emphasis added).

In a sweeping departure from this and other case law acknowledging the jurisdictional nature of certain rules, the majority proclaims that "a rule of court cannot convey or limit jurisdiction." Supra at 5. Going on to explain why that statement is consistent with the Supreme Court's holding to the contrary, the majority apologetically notes that the Supreme Court's "usage of 'jurisdictional' [when discussing these rules] is simply another example of its use of this term as inartful shorthand for what in reality is more accurately described as a mandatory 'claims-processing rule.'" Supra at 8. What that Court really meant to say, according to the majority, is that the rules are simply "emphatic time prescriptions . . . designed to superintend and facilitate the orderly and prompt resolution and disposition of matters before the courts of the Commonwealth." Supra at 10. To the contrary, I believe that the Supreme Court's use of the

- 12 -

term jurisdiction in <u>Towler</u> was both deliberate and fully consistent with its definition of that term in <u>Ghameshlouy v. Commonwealth</u>, 279 Va. 379, 388-89, 689 S.E.2d 698, 702-03 (2010), and <u>Porter v. Commonwealth</u>, 276 Va. 203, 228, 661 S.E.2d 415, 426 (2008).  I also believe that unless and until the Supreme Court makes it clear that <u>Towler</u>, and the similar cases discussed below, are no longer controlling precedent, we are bound to follow them.  Therefore, I dissent.

Historically, this Court has routinely dismissed cases for the failure to file an indispensable transcript.[9]  <u>See</u> <u>Mitchell v. O'Brien</u>, No. 1548-06-4 (Va. Ct. App. Mar. 19, 2007); <u>Smith v. Commonwealth</u>, 32 Va. App. 766, 531 S.E.2d 11 (2000); <u>Price v. Price</u>, 17 Va. App. 105, 435 S.E.2d 652 (1993); <u>Clary v. Clary</u>, 15 Va. App. 598, 425 S.E.2d 821 (1993); <u>Anderson v. Commonwealth</u>, 13 Va. App. 506, 413 S.E.2d 75 (1992); <u>Williams v. Commonwealth</u>, 7 Va. App. 516, 375 S.E.2d 364 (1988); <u>Bunton v. Commonwealth</u>, 6 Va. App. 557, 370 S.E.2d 470 (1988); <u>Holley v. City of Newport News</u>, 6 Va. App. 567, 370 S.E.2d 320 (1988); <u>Jordan v. Price</u>, 3 Va. App. 672, 353 S.E.2d 168 (1987); <u>Turner v. Commonwealth</u>, 2 Va. App. 96, 341 S.E.2d 400 (1986); <u>Barrett v. Barrett</u>, 1 Va. App. 378, 339 S.E.2d 208 (1986).  However, since <u>Jay v. Commonwealth</u>, 275 Va. 510, 659 S.E.2d 311 (2008), we no longer dismiss these cases.[10]  Subsequent to <u>Jay</u>, we have held that the underlying issue to which the indispensable transcript

---

[9] While this dissent refers to indispensable transcripts, the following analysis applies equally to an indispensable written statement of facts.  Rule 5A:8(b).  I also note that, contrary to the majority's opinion, nothing in this dissent would require this Court to dismiss any appeal for the mere failure to file a dispensable transcript.  To the extent that the majority interprets this dissent to require dismissal in every case where a transcript is not filed, it misstates my position.

[10] Although the orders we have issued subsequent to <u>Jay</u> have reflected our change in practice, this is the first case in which we have actually been called upon to address the issue.

related was waived, resulting in a denial of the petition for appeal,[11] an affirmance,[12] or, in some cases, a summary affirmance.[13]

The majority concedes that Jay applied only to Rule 5A:20(e), but nonetheless expands Jay's application beyond its terms because it "see[s] no rational reason why this principle should not also apply to Rule 5A:8." Supra at 4. I disagree. In fact, I see many rational reasons why this principle should be limited to the context of Jay's *ratio decidendi*.

In Jay, our Supreme Court reversed a decision of this Court where this Court dismissed an appeal for failing to comply with Rule 5A:20(e). Jay, 275 Va. at 520, 659 S.E.2d at 317. The Supreme Court concluded that dismissal is an appropriate remedy only when the violation of a Rule is jurisdictional. Id. at 517, 659 S.E.2d at 315. The Court stated that "[b]y *dismissing* rather than *denying* the appeals, the Court of Appeals rendered the requirements of Rule 5A:20(e) jurisdictional." Id. (emphasis in original). The Court held that it was error to dismiss the appeal and concluded that Rule 5A:20(e) is not jurisdictional. The Court went on to suggest that the appropriate remedy for the failure to comply with that Rule is to "treat [the] question presented as waived" and deny the petition for appeal, or, if the petition for appeal had already been granted, affirm. Id. at 520, 659 S.E.2d at 317. In the alternative, the Court also suggested that "the Court of Appeals may . . . require an appellant to re-submit the petition for appeal or opening brief . . ." or, if the failure to strictly adhere to the Rule was insignificant, decide the case on its merits. Id.

---

[11] Moore v. Everitt, No. 3088-08-3 (Va. Ct. App. Apr. 23, 2009) (unpublished order); Lewis v. Commonwealth, No. 0954-08-1 (Va. Ct. App. Oct. 8, 2008) (unpublished order).

[12] Shiembob v. Shiembob, 55 Va. App. 234, 246, 685 S.E.2d 192, 198-99 (2009); Mollette v. Roanoke County Dep't of Soc. Serv., No. 2963-08-3 (Va. Ct. App. Apr. 28, 2009).

[13] Bowser v. Guenard, No. 0024-08-1 (Va. Ct. App. June 16, 2009); Brown v. Ketchum, No. 1835-08-4 (Va. Ct. App. Jan. 27, 2009); Tully v. Commonwealth of Va. Dep't of Soc. Serv., Div. of Child Support Enforcement, No. 2104-08-4 (Va. Ct. App. Dec. 16, 2008).

The Supreme Court's only holding in Jay was that the Court of Appeals erred by dismissing for failure to comply with a non-jurisdictional Rule.[14] Jay, then, requires us not to assume that all rules are non-jurisdictional, as the majority clearly does, but to "adhere to this distinction between jurisdictional and non-jurisdictional rule requirements . . . ." 275 Va. at 518, 659 S.E.2d at 315. Such an admonition requires us to consider each Rule and its contents individually to determine whether it is, wholly or partially, jurisdictional or non-jurisdictional. Thus, to answer the parties' ultimate question—what is the appropriate remedy for the failure to timely file an indispensable transcript—we need only answer the question of whether such a failure is jurisdictional.

Like the majority, I begin with the recognition that "'jurisdiction is a word of many, too many, meanings.'" Ghameshlouy, 279 Va. at 388, 689 S.E.2d at 702 (quoting Ghameshlouy v. Commonwealth, 54 Va. App. 47, 57, 675 S.E.2d 854, 859 (2009) (Haley, J. dissenting)). Indeed, the Supreme Court has noted that "[j]urisdiction is a term which can engender much confusion because it encompasses a variety of separate and distinct legal concepts." Porter v. Commonwealth, 276 Va. 203, 228, 661 S.E.2d 415, 426 (2008). Fortunately, the Supreme Court did not end its discussion with such a defeated tone, but rather expressly defined the term so as to guide both the bench and bar toward a greater understanding of such a confusing concept:

> The term jurisdiction embraces several concepts including subject matter jurisdiction, which is the authority granted through constitution or statute to adjudicate a class of cases or controversies; territorial jurisdiction, that is, authority over

---

[14] The majority states that "[t]he holding in Jay could hardly be clearer, '[b]y *dismissing* rather than *denying* the appeals, the Court of Appeals rendered the requirements of Rule 5A:20(e) jurisdictional.'" Supra at 4. I agree that Jay's holding could hardly be clearer, but reading the entire opinion in context, the Court's holding is simply that the Court of Appeals erred in dismissing for a violation of a non-jurisdictional rule. The Supreme Court's holding rests entirely on its conclusion that Rule 5A:20(e) is not jurisdictional. In contrast, and noted below, the Supreme Court has repeatedly and consistently held that Rule 5A:8 is *jurisdictional* and the remedy for a violation is *dismissal*. Had the Court intended the holding in Jay to overturn this long-standing precedent, I believe it would have explicitly done so.

- 15 -

persons, things, or occurrences located in a defined geographic area; notice jurisdiction, or effective notice to a party or if the proceeding is *in rem* seizure of a *res*; and "*the other conditions of fact must exist which are demanded by the unwritten or statute law as the prerequisites of the authority of the court to proceed to judgment or decree*."

Id. (emphasis added) (quoting Farant Inv. Corp. v. Francis, 138 Va. 417, 427-28, 122 S.E. 141, 144 (1924)); accord Ghameshlouy, 279 Va. at 389, 689 S.E.2d at 703 (referring to each type of jurisdiction listed above as an element of a court's "'active jurisdiction'" (quoting Bd. of Supervisors v. Bd. of Zoning Appeals, 271 Va. 336, 343-44, 626 S.E.2d 374, 379 (2006))). The distinctions between these types of "jurisdiction" are far more than an academic exercise because our Supreme Court has mandated certain practical differences among them.

"Jurisdiction . . . is the power to adjudicate a case upon the merits and dispose of it as justice may require." Bd. of Supervisors, 271 Va. at 343, 626 S.E.2d at 378 (quoting Shelton v. Sydnor, 126 Va. 625, 629, 102 S.E. 83, 85 (1920)) (alterations in original). The Supreme Court has parsed the term "jurisdiction" into two concepts: potential and active jurisdiction. Ghameshlouy, 279 Va. at 388-89, 689 S.E.2d at 702-03. Potential jurisdiction is subject matter jurisdiction, which "is the authority granted to [the court] by constitution or statute over a specified class of cases or controversies . . . ."[15] Id. at 388, 689 S.E.2d at 702. However,

---

[15] The majority contends that "potential jurisdiction" consists of subject matter jurisdiction, territorial jurisdiction, notice jurisdiction, and authority jurisdiction. Supra at 6-7. However, the Supreme Court in Ghameshlouy clearly limited this concept to subject matter jurisdiction. 279 Va. at 388-89, 689 S.E.2d at 702-03. Indeed, this is not a new concept:

> The jurisdiction under consideration is what Mr. Lile, in his excellent work above cited, calls "active jurisdiction," which he defines as "the right to exercise the potential jurisdiction in a given case" (Lile's Eq. Pl. & Pr. sec. 12); and *he, in turn, defines "potential jurisdiction" as "the power granted by the sovereignty creating the court to hear and determine controversies of a given character" (Idem. sec. 11) namely, jurisdiction over the subject-matter*. And as Mr. Lile also says: "In order, however, that the court thus vested with potential jurisdiction may rightfully exercise

potential jurisdiction alone is insufficient to provide a court the power to adjudicate a case on the merits. A court's potential jurisdiction "becomes 'active' jurisdiction" when all of the following *elements* are present: subject matter jurisdiction, territorial jurisdiction, notice jurisdiction, and authority jurisdiction. Id. at 388-89, 689 S.E.2d at 702-03; accord Bd. of Supervisors, 271 Va. at 343, 626 S.E.2d at 378 (naming these four types of jurisdiction as elements of a court's active jurisdiction); Farant Inv. Corp., 138 Va. at 427, 122 S.E. at 144 (calling these types of jurisdiction "four essential requisites to confer upon a court 'active jurisdiction'").

Neither party has argued that we lack subject matter jurisdiction, and it would certainly be a futile exercise to do so. Our Constitution grants the General Assembly "the power to determine the original and appellate jurisdiction of the courts of the Commonwealth." Va. Const. art. VI, § 1. And, the General Assembly exercised this constitutional power by enacting Code § 17.1-406(A)(i), which clearly grants to this Court appellate subject matter jurisdiction over "any final conviction in a circuit court of a traffic infraction or a crime . . . ." Unquestionably, therefore, this Court has subject matter jurisdiction over this appeal.

Thus, like Ghameshlouy, I am not concerned with our potential jurisdiction, which is subject matter jurisdiction, or, the statutory authority of this Court to consider the subject matter

the jurisdiction" (i.e., have "active jurisdiction"), "in a particular case, certain conditions of fact must appear—these conditions varying with the character or purpose of the proceeding. These conditions of fact may be demanded either by the settled principles of the unwritten law, or by the mandate of the statute law."

There are, indeed, four essential requisites to confer upon a court "active jurisdiction," which may be thus classed, (1) potential jurisdiction, (2) territorial jurisdiction, (3) actual jurisdiction of the subject-matter where the proceeding is *in rem*, and also of the proper parties where the proceeding is personal, and (4) the other conditions of fact must exist which are demanded by the unwritten or statute law as the prerequisites of the authority of the court to proceed to judgment or decree.

Farant Inv. Corp., 138 Va. at 427-28, 122 S.E. at 144 (emphasis added).

of this appeal. 279 Va. at 389, 689 S.E.2d at 703. Nor am I concerned with our personal jurisdiction over the parties. Subject matter jurisdiction and personal jurisdiction, however, do not necessarily equate to the requisite active jurisdiction to decide the case. Ghameshlouy, 279 Va. at 388-89, 689 S.E.2d at 702-03. This Court must also have the authority to convert our potential subject matter jurisdiction into active jurisdiction, or, put differently, we must have the authority to exercise our subject matter jurisdiction. Id. Without this "active jurisdiction," this Court is without "power to adjudicate [this] case upon the merits."[16] Bd. of Supervisors, 271 Va. at 343, 626 S.E.2d at 379.

This authority to exercise subject matter jurisdiction is a completely distinct and different jurisdictional concept. Nelson v. Warden, 262 Va. 276, 281, 552 S.E.2d 73, 75 (2001); see also Mohamed v. Commonwealth, 56 Va. App. 95, 98-99, 691 S.E.2d 513, 514-15 (2010). It "is commonly described as those 'conditions of fact [that] must exist which are demanded by the unwritten or statute law as the *prerequisites of the authority of the court* to proceed to judgment or decree.'" Mohamed, 56 Va. App. at 101, 691 S.E.2d at 516 (quoting Porter, 276 Va. at 228, 661 S.E.2d at 426) (emphasis added). Unlike subject matter jurisdiction, which originates in a

---

[16] The majority attempts to draw a distinction between a court's "power" and "authority." According to the majority, "authority" is jurisdictional, but "power" is not. Thus, the majority states that "a court's '*power*' to actually reach the merits of a case depends upon a party's compliance with any and all mandatory requirements imposed by the rules of court." Supra at 8 (emphasis added). I see no support for this distinction in our jurisprudence and, further, as noted above, the Supreme Court defined "jurisdiction" in Board of Supervisors as "the *power* to adjudicate a case upon the merits and dispose of it as justice may require." 271 Va. at 343, 626 S.E.2d at 378 (quoting Shelton, 126 Va. at 629, 102 S.E. at 85) (emphasis added).
I view a court's power to adjudicate a case on the merits as an overall description of the concept of jurisdiction including both potential and active jurisdiction. Thus, in order for a court to adjudicate a case on the merits, the court must have subject matter, territorial, notice, and authority jurisdiction. It follows logically, then, that "authority" is a required element of a court's "power" to proceed on the merits. Where a rule limits a court's "authority" to proceed to judgment or decree, the court has no "power" to adjudicate the case on the merits. This seems to be consistent with the Supreme Court's description of jurisdiction in Ghameshlouy, Board of Supervisors, Porter, Nelson v. Warden, 262 Va. 276, 281, 552 S.E.2d 73, 75 (2001), etc.

- 18 -

constitution or statute, these conditions of fact often arise from "the unwritten or the statute law." Id. The fact that a rule falls within this "authority jurisdiction" as opposed to "subject matter jurisdiction" does not mean that the rule is not jurisdictional. On the contrary, a rule that limits this Court's authority to proceed to a decree is by definition jurisdictional.

Our Constitution has specifically delegated to our Supreme Court the "authority to make rules governing the course of appeals and the practice and procedures to be used in the courts of the Commonwealth, but such rules shall not be in conflict with the general law as the same shall, from time to time, be established by the General Assembly." Va. Const. art. VI, § 5. Thus, the Constitution provides for both the Supreme Court and the General Assembly to promulgate rules to govern the courts of the Commonwealth. As such, the Supreme Court engages in a quasi-legislative function by promulgating these rules much in the same way that an executive agency exercises a quasi-legislative function in promulgating rules and regulations pursuant to the Virginia Administrative Process Act. Thus, to the extent that the Supreme Court's rules do not conflict with those established by the General Assembly, those rules carry the force and effect of law.

The General Assembly has enacted numerous general laws, and the Rules of the Supreme Court are consistent with those laws. See Code § 17.1-100 through 17.1-629. But, in the absence of legislation from the General Assembly, the responsibility for "making rules governing the course of appeals" rests predominantly with the Supreme Court. Indeed, the General Assembly has also delegated to our Supreme Court the authority to "make general regulations for the practice in all courts of the Commonwealth," including "a system of rules of

- 19 -

practice . . . ."[17] Code § 8.01-3(A). This delegation of rulemaking authority is in addition to the Supreme Court's constitutional authority. If the General Assembly disagrees with one of these rules, it "may, from time to time, by the enactment of a general law, modify, or annul any rules adopted" by the Supreme Court. Code § 8.01-3(D); see also Va. Const. art. VI, § 5; Commonwealth v. Smith, 263 Va. 13, 18, 557 S.E.2d 223, 226 (2002) (stating that "[t]he General Assembly has implicitly modified Rule 3A:6(b)" by enacting Code § 18.2-31(8)). Essentially, both the Constitution and the General Assembly have delegated rulemaking authority to the Supreme Court and has allowed it to limit the authority of the courts to act in certain situations.

The majority contends that a rule of court cannot, in any circumstance, convey or limit jurisdiction. However, denying a rule jurisdictional character has never been based on the erroneous assumption that a rule can never be jurisdictional. See State Water Control Bd. v. Crutchfield, 265 Va. 416, 424, 578 S.E.2d 762, 766 (2003). Indeed, no decision in our jurisprudence has ever established the majority's "basic premise." Rather, the analysis has always centered on the precise language of the specific rule in question. Id. In State Water Control Board, the Supreme Court concluded that Rule 2A:4 is not jurisdictional because of the "absence of language in the Rule compelling such a result." Id. This reinforces the view that a rule can limit the jurisdiction of a Court if the language in the rule compels such a result.

---

[17] More specifically, the General Assembly delegated to

> [t]he Supreme Court [the responsibility to] prescribe and publish the initial rules governing practice, procedure, and internal processes for the Court of Appeals designed to achieve the just, speedy, and inexpensive disposition of all litigation in that court consistent with the ends of justice and to maintain uniformity in the law of the Commonwealth.

Code § 17.1-403.

For example, Rule 1:1 limits the circuit court's jurisdiction by prescribing that "[a]ll final judgments, orders, and decrees . . . shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." Recently, the Supreme Court stated that "the provisions of Rule 1:1 are mandatory in order to assure the certainty and stability that the finality of judgments brings. Once a final judgment has been entered and the twenty-one day time period of Rule 1:1 has expired, the trial court is thereafter without jurisdiction in the case." City of Suffolk v. Lummis Gin Company, 278 Va. 270, 276, 683 S.E.2d 549, 552 (2009) (citing Super Fresh Food Markets v. Ruffin, 263 Va. 555, 561 S.E.2d 734 (2002)); accord In Re: Commonwealth of Virginia, 278 Va. 1, 38, 677 S.E.2d 236, 255-56 (2009); Upper Occoquan Sewage Auth. v. Blake Constr. Co., 275 Va. 41, 60, 655 S.E.2d 10, 21 (2008); Safrin v. Travaini Pumps USA, Inc., 269 Va. 412, 418, 611 S.E.2d 352, 355 (2005); James ex rel. Duncan v. James, 263 Va. 474, 484, 562 S.E.2d 133, 139 (2002); Super Fresh Food Markets, 263 Va. at 563, 561 S.E.2d at 738-39; Singh v. Mooney, 261 Va. 48, 54, 541 S.E.2d 549, 552 (2001); Davis v. Mullins, 251 Va. 141, 149, 466 S.E.2d 90, 94 (1996); Smith v. Stanaway, 242 Va. 286, 289, 410 S.E.2d 610, 612 (1991); School Bd. v. Caudill Rowlett Scott, 237 Va. 550, 554, 379 S.E.2d 319, 321 (1989); Rook v. Rook, 233 Va. 92, 95, 353 S.E.2d 756, 758 (1987); Va. Dept. Corr. v. Crowley, 227 Va. 254, 264, 316 S.E.2d 439, 444 (1984); In Re: Dept. of Corrections, 222 Va. 454, 465, 281 S.E.2d 857, 863 (1981); Prohm v. Anderson, 220 Va. 74, 255 S.E.2d 491 (1979).

The majority disregards this long line of cases by simply calling the Supreme Court's use of the word "jurisdiction" an "inartful shorthand for what is more accurately described as a mandatory 'claims-processing rule' . . . ." Supra at 8. The majority continues in a lengthy footnote to recognize what it perceives as "facially irreconcilable precedent from our Supreme

- 21 -

Court" by citing <u>Black's Law Dictionary</u> and two Supreme Court of Virginia cases[18] that stand for the same proposition; that is, that the failure to file an indispensable transcript is jurisdictional. <u>Supra</u> at 9 n.7. In presuming that the Supreme Court has "taken steps toward refining the concept of jurisdiction," <u>id.</u>, the majority ignores the broad definition of jurisdiction set out in <u>Ghameshlouy</u> and <u>Porter</u>. Indeed, the Supreme Court reinforced the proposition that Rule 1:1 is jurisdictional in <u>Ghameshlouy</u> when it stated that "the circuit court's *jurisdiction* over the case extends 21 days beyond the entry of the final order." 279 Va. at 390, 689 S.E.2d at 703 (citing Rule 1:1) (emphasis added).

Nonetheless, the majority concludes that Rule 1:1 is not jurisdictional and the Supreme Court's use of that term in <u>Ghameshlouy</u> was inartful when it states in footnote 7, "Rule 1:1 does not limit a court's 'jurisdiction,' but rather limits the *power* of a court, which already has jurisdiction, to modify its final order more than 21 days after its entry." <u>Supra</u> at 9 n.7 (emphasis in original). However, as stated above, a court's active jurisdiction includes "'other conditions of fact [that] must exist which are demanded by the unwritten or statute law as the prerequisites of the *authority of the court to proceed to judgment or decree*.'" <u>Porter</u>, 276 Va. at 228, 661 S.E.2d at 426 (quoting <u>Farant Inv. Corp.</u>, 138 Va. at 427-28, 122 S.E. at 144) (emphasis added). "These 'conditions of fact' can be affected by various factors, including . . . the passage of time." <u>Mohamed</u>, 56 Va. App. at 101, 691 S.E.2d at 516 (citing <u>Cook v. Commonwealth</u>, 211 Va. 290, 293, 176 S.E.2d 815, 817 (1970)). Clearly, the fact that must exist as a prerequisite to the trial court's authority to proceed to judgment or decree is whether the modification occurred within

---

[18] The majority cites to both <u>Dudley v. Florence Drug Corp.</u>, 204 Va. 533, 535, 132 S.E.2d 465, 467 (1963), and <u>Towler</u>, 216 Va. at 535, 221 S.E.2d 121. Neither of these cases is facially irreconcilable with any Supreme Court precedent that the majority cites nor that I can find.

21 days after the entry of the final order. Thus, the only conclusion I can reach is that Rule 1:1 is jurisdictional.[19]

Further, the majority cites to both Nelson, 262 Va. at 278, 552 S.E.2d at 74, and David Moore v. Commonwealth, 259 Va. 431, 437, 527 S.E.2d 406, 409 (2000), as evidence that our Supreme Court has "taken steps to refin[e] the concept of 'jurisdiction.'" Nelson involved a Baker claim[20] that was controlled by the rule established one year earlier in Moore. In Moore, the Court held that the statute limited the trial court's authority to proceed to judgment. 259 Va. at 440, 527 S.E.2d at 411. Because the limitation on the court's authority limited its jurisdiction, the Court held that the failure to comply rendered the judgment void. Id. In Nelson, the Supreme Court admitted its error in Moore and concluded that "the statutory requirement of notice to parents was not jurisdictional but procedural in nature, that a failure to notify parents could be waived by a failure to object, and correspondingly, that a failure to comply with the requirement rendered subsequent convictions voidable and not void." 262 Va. at 285, 552 S.E.2d at 77. Essentially, the Supreme Court concluded that the statute did not limit the trial court's authority to proceed to judgment at all, but rather merely imposes a procedural requirement. Thus, the notice requirement was not jurisdictional.

The majority overlooks the Supreme Court's discussion of the language used in the specific statute, which was dispositive in that case. In that discussion, the Supreme Court acknowledged that in 1977, the General Assembly removed language from the statute that

---

[19] Moreover, the majority does not address the fact that the modification, vacation, or suspension of a final order after that twenty-one-day period is void. Crowley, 227 Va. at 261-62, 316 S.E.2d at 443.

[20] A Baker claim is one that arises from Commonwealth v. Baker, 258 Va. 1, 516 S.E.2d 219 (1999) (per curiam), aff'g Baker v. Commonwealth, 28 Va. App. 306, 504 S.E.2d 394 (1998) (holding that the failure to notify a juvenile's parents of proceedings in juvenile court renders void subsequent criminal convictions in circuit court).

- 23 -

essentially made it jurisdictional: "*in no case shall the hearing proceed* until the parent or parents of the child . . . have been notified." Id. at 283, 552 S.E.2d at 76 (emphasis in original). The new language merely required that "the juvenile court shall give parents notice in writing of a transfer hearing," and the Supreme Court concluded that this language was procedural and not jurisdictional. Id. at 283, 552 S.E.2d at 77. The Supreme Court stated in Nelson that the new language did not "remotely suggest[] an intention to re-institute a jurisdictional requirement in the notice provisions of the juvenile statutes." Id. Thus, Nelson concluded that the notice requirement was not jurisdictional simply because of the absence of language in the statute compelling such a result. Cf. State Water Control Bd., 265 Va. at 424, 578 S.E.2d at 766 (concluding that Rule 2A:4 is not jurisdictional because of the "absence of language in the Rule compelling such a result").

Thus, I am unwilling to cast off such a well-established legal principle that the trial court is divested of jurisdiction over a case after twenty-one days. This limitation on the circuit court's jurisdiction is solely rule-based and has no statutory foundation. As a result, I disagree with the majority's "basic premise . . . that a rule of court cannot create or limit a court's jurisdiction . . . ." Supra at 8.

Applying these principles to the case at hand, it is imperative to note that the jurisdictional nature of Rule 5A:8 is *not* an issue of first impression. Both this Court and our Supreme Court have held repeatedly that failure to file an indispensable transcript will result in the dismissal of an appeal. In Dudley v. Florence Drug Corporation, 204 Va. 533, 535, 132 S.E.2d 465, 466-67 (1963), the appellant tendered the transcript to the trial court six days after the sixty-day deadline set forth in Rule 5:1, § 3(e) and (f), which was the precursor to former

- 24 -

Rule 5:9 and current Rules 5:11 and 5A:8.[21]  Thus, the transcript was not properly before the

Court.  The Court stated that "Rule 5:1, § 3(e) and (f) is mandatory and *jurisdictional* and a

failure to comply with it is fatal to an appeal."  Id. at 535, 132 S.E.2d at 467 (emphasis added).

The Court reasoned that the "plaintiff has flagrantly violated the mandatory requirements of Rule

5:1, § 3(e) and (f)" and that "[s]uch a lack of compliance with the Rule is fatal to the *jurisdiction*

of this Court."  Id. (emphasis added). The Court then sustained the defendant's motion to dismiss

the writ of error and dismissed the writ.[22]  Id.

---

[21] Rule 5:1, § 3(e) and (f) is similar to Rules 5:11 and 5A:8 in that it provides a procedure for making a transcript or a statement of facts a part of the record.  Rule 5:1, § 3(e) and (f) provides as follows:

> (e) Oral testimony and other incidents of the trial or hearing transcribed by a reporter, and any written statement of facts, testimony or other incidents of the case become part of the record when delivered to the clerk, if the transcript or statement is signed at the end by counsel for all parties and tendered to the judge within 60 days and signed by the judge within 70 days after final judgment.  It shall be forthwith delivered to the clerk who shall certify on it the date he receives it.
> (f) Such a transcript or statement not signed by counsel for all parties becomes part of the record when delivered to the clerk, if it is tendered to the judge within 60 days and signed at the end by him within 70 days after final judgment.  It shall be forthwith delivered to the clerk who shall certify on it the date he receives it.  Counsel tendering the transcript or statement shall give opposing counsel reasonable written notice of the time and place of tendering it and a reasonable opportunity to examine the original or a true copy of it.  The signature of the judge, without more, will be deemed to be his certification that counsel had the required notice and opportunity, and that the transcript or statement is authentic.  He shall note on it the date it was tendered to him and the date it was signed by him.

[22] The Supreme Court reached the same result in both Fearon v. Commonwealth, 211 Va. 256, 257, 176 S.E.2d 921, 922 (1970) (dismissing appeal), and Crum v. Udy, 206 Va. 880, 881, 146 S.E.2d 878, 879 (1966) (dismissing appeal), where the appellants failed to comply with Rule 5:1, § 3(e) and (f).

Similarly, in Towler, the appellant filed the transcript with the court; however, he failed to accompany it with "any notice, certificate of service, or acceptance of service," which was required by former Rule 5:9. Towler, 216 Va. at 534, 221 S.E.2d at 120. Our Supreme Court stated that because of the appellant's failure to abide by former Rule 5:9, the transcript was not made a part of the record. Id. Then, the Court stated that the transcript was indispensable to disposition of the issues before it and concluded that it "must *dismiss* the writ as improvidently granted." Id. (emphasis added). The Court stated:

> [w]e take the occasion . . . to reiterate the *jurisdictional* nature of [former] Rule 5:9 and to reemphasize the necessity of compliance with its mandatory provisions. We do this because we have observed far too many violations of this rule; and we lament the numerous instances in which we have been forced to *dismiss* appeals because of failure to observe the rule's requirements.

Id. at 534, 221 S.E.2d at 121 (emphasis added). After explaining the requirements of former Rule 5:9(b), the Court stated that "[t]hese are simple, easily understood rule provisions. But they are *jurisdictional*, and failure to comply therewith will result, as in the present case, in *dismissal*, either before or after appeal is awarded." Id. at 535, 221 S.E.2d at 121 (emphasis added).

This Court has also enunciated these principles repeatedly throughout its jurisprudence. See Smith, 32 Va. App. at 771-72, 531 S.E.2d at 14-15; Clary, 15 Va. App. at 601, 425 S.E.2d at 822; Anderson, 13 Va. App. at 509, 413 S.E.2d at 77; Williams, 7 Va. App. at 519, 375 S.E.2d at 366; Bunton, 6 Va. App. at 561, 370 S.E.2d at 472; Holley, 6 Va. App. at 568-69, 370 S.E.2d at 321; Jordan, 3 Va. App. at 673, 353 S.E.2d at 168; Turner, 2 Va. App. at 99, 341 S.E.2d at 402; Barrett, 1 Va. App. at 380, 339 S.E.2d at 209-10. For example, in Barrett, the Court stated that the failure to comply with Rule 5A:8 "is *jurisdictional* and the failure to comply therewith will result in *dismissal*." Barrett, 1 Va. App. at 380, 339 S.E.2d at 210 (citing Towler, 216 Va. 533, 221 S.E.2d 119) (emphasis added). The Court went on to state that "[t]he transcript or written statement is indispensable to a disposition of this appeal and is *jurisdictional*. There is no rule,

- 26 -

statute or rationale that allows us to decide otherwise.  This case is, therefore, *dismissed*."  Id. (emphasis added).

When, however, the issues on appeal may be decided without the transcript (i.e. the transcript is not indispensable), its absence does not limit our jurisdiction to decide those issues that do not require a transcript.  We have recognized that there is no mandate in our Rules that requires either party to file a transcript, Wolfe v. Commonwealth, 6 Va. App. 640, 643, 371 S.E.2d 314, 315 (1988), and "[t]he absence or late filing of the transcript . . . does nothing to diminish our jurisdiction."  Turner, 2 Va. App. at 99, 341 S.E.2d at 402.  We explained that statement in Turner and limited its application to those issues for which the transcript was not indispensable.  Id.  In other words,"[i]f the record on appeal is sufficient in the absence of the transcript to determine the merits of the appellant's allegations, [then] we are free to proceed to hear the case."  Id.; see also Wolfe, 6 Va. App. at 643, 371 S.E.2d at 315-16.

"The importance of the record is obvious, for it is axiomatic that an appellate court's review of the case is limited to the record on appeal."  Turner, 2 Va. App. at 99, 341 S.E.2d at 402.  A transcript is indispensable when, in the absence of a transcript, the record is not "complete to the degree necessary to adjudicate the appeal," id., "determine the merits of the appellant's allegations," id., or "permit resolution of appellate issues."  Rule 5A:8(b).  Thus, it is clear that if the transcript is indispensable, then "any assignments of error affected by the omission *shall not* be considered."  Rule 5A:8(b) (emphasis added).

In Turner, this Court determined that the transcript was indispensable and concluded that there was "no alternative but to dismiss the case for failure to comply with mandatory rule provisions."  Turner, 2 Va. App. at 100, 341 S.E.2d at 402.  We reached the same conclusion in Anderson, 13 Va. App. at 510, 413 S.E.2d at 78, where we said "[b]ecause the statement of facts is indispensable to a determination of the question presented, we must dismiss the appeal."  In

contrast, however, we reached the merits in Wolfe because "the issue presented . . . [was] capable of resolution without a transcript." Wolfe, 6 Va. App. at 644, 371 S.E.2d at 316. We noted that the "decision to review [that] case without a trial transcript or statement of facts is the rare exception rather than the general rule. The trial transcript usually is indispensable." Id. Thus, cases where a transcript is not filed are usually dismissed.

Contrary to the majority's position, the Supreme Court's opinion in Jay does nothing to overturn Towler, Fearon, Crum, Dudley, Smith, Clary, Anderson, Williams, Bunton, Holley, Jordan, Turner, or Barrett. While our post-Jay application of Rule 5A:8 may have changed from dismissing to affirming cases affected by this issue, our jurisprudence does not support that practice. Indeed, just last year, our Supreme Court, in an unpublished order,[23] held that this Court did not err in dismissing an appeal "on the ground that a transcript or written statement of facts was 'indispensable to a determination of the questions presented.'"[24] Mitchell v. O'Brien, No. 072633 (Va. Feb. 13, 2009).

---

[23] In Sheets v. Castle, 263 Va. 407, 411, 559 S.E.2d 616, 619 (2002), our Supreme Court stated:

> With the exception of cases with procedural defects and the limited number of cases for which appellate review by the Supreme Court of Virginia is dependent upon "a substantial constitutional question as a determinative issue or matters of significant precedential value" (Code §§ 17.1-410 and -411), the refusal of a petition for appeal constitutes a decision on the merits.

And, a "decision on the merits"—including the denial of a petition of appeal—has precedential value, as long as "the grounds upon which the refusal is based are discernible from the four corners of the Court's order." Id. at 411-12, 559 S.E.2d at 619. Because I conclude that our Supreme Court's reasoning for its conclusion that this Court did not err in dismissing the case in Mitchell v. O'Brien, No. 1548-06-4 (Va. Ct. App. Mar. 19, 2007), for failure to timely file an indispensable transcript is apparent from the four corners of their order, I consider it controlling precedent.

[24] My opinion here is buttressed by the fact that our dismissal of the case in Mitchell v. O'Brien, No. 1548-06-4 (Va. Ct. App. Mar. 19, 2007), was pre-Jay and the Supreme Court's unpublished order was released post-Jay, Mitchell v. O'Brien, No. 072633 (Va. Feb. 13, 2009).

Further, I note several important distinctions between Rules 5A:20 and 5A:8. First, unlike Rule 5A:20, Rule 5A:8 expressly limits our authority to act. "When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by the omission *shall not be considered*." Rule 5A:8 (emphasis added). Rule 5A:20 merely states that "the opening brief of appellant shall contain" a list of items, a phrase that does not limit our authority to proceed to judgment or decree. Second, a violation of Rule 5A:8, unlike a violation of Rule 5A:20, cannot be corrected or overlooked. Once the time limit for filing the transcript with the trial court has expired, it cannot thereafter be extended. Jordan, 3 Va. App. 672, 353 S.E.2d 168.[25] The Supreme Court noted in Jay that this Court could take actions to address a violation of Rule 5A:20, such as requiring an appellant to refile a defective brief. No such corrective measures are available to address a failure to file an indispensable transcript.

Thus, I would hold that when an indispensable transcript is not made part of the record, this Court lacks both the authority and the ability to address the issues raised. Therefore, I would conclude that, if the transcript is indispensable, the proper remedy for failing to file such transcript is dismissal. Thus, to determine whether the fate of this particular appeal is a dismissal, affirmance, or reversal, I would next decide whether the untimely-filed suppression-hearing transcript is indispensable to our ability to decide this case.

The only question presented that Smith raises on the merits of this case is whether the trial judge erred in denying his motion to suppress an out-of-court identification because the circumstances were unduly suggestive. In Smith's motion to suppress he argued "that complete,

---

[25] The majority also raises the argument that Rule 5A:18 is not jurisdictional in order to support its argument that Rule 5A:8 is not jurisdictional. Of course Rule 5A:18 is not jurisdictional. It contains an "ends of justice" exception, something that is inconsistent with a jurisdictional requirement. Rule 5A:8, however, is mandatory, and provides for no exception. Thus, I fail to see the logic in that argument.

neutral, and unbiased photographic lineups were not provided to the alleged victim" and he gave notice that he would "move to exclude all identifying evidence from admission into evidence at his subsequent trial." That is the only information in the record regarding the victim's identification of Smith. The record simply included the typical court documents such as the indictment, motion to suppress, plea agreement, conviction order, sentencing order, notice of appeal, Smith's motion to dismiss, and the transcript from the sentencing hearing. In the absence of the suppression-hearing transcript, the record is not complete to the degree necessary to adjudicate the appeal and determine the merits of the appellant's allegations. Therefore, I would conclude that the suppression-hearing transcript is indispensable to the resolution of Smith's question presented.

Accordingly, I would dismiss Smith's appeal, thereby allowing his convictions to stand.