PRESENT: Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and Lemons, JJ., and Compton, S.J.

STATE WATER CONTROL BOARD,
DEPARTMENT OF ENVIRONMENTAL
QUALITY, ET AL.

v.  Record No. 021507    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                          April 17, 2003

FRANCES BROADDUS CRUTCHFIELD, ET AL.

FROM THE COURT OF APPEALS OF VIRGINIA


This appeal originates from a final decision of the State Water Control Board (the Board). We primarily consider whether the petitioner landowners properly perfected their appeal in the circuit court and whether they have standing to challenge the Board's decision granting a permit for the discharge of treated wastewater into a river adjoining their land.

In April 1999, the Board, under authority provided in Code § 62.1-44.15(5) of the State Water Control Law, Code §§ 62.1-44.2 through -44.34:28, granted Hanover County a Virginia Pollution Discharge Elimination System Permit (the permit). The permit allows the County to discharge up to ten million gallons per day of treated wastewater into the Pamunkey River (the river) adjacent to property owned by Frances B. Crutchfield and her son, Henry R. Broaddus (collectively, the petitioners).

The petitioners filed a petition for appeal in the Circuit Court of the City of Richmond against the Board and the

Department of Environmental Quality (DEQ) (collectively, the Board), asking that the court declare the permit invalid. In response, the Board filed a demurrer asserting that the petitioners lacked standing to pursue their appeal. The Board also asked the court to dismiss the appeal on the ground that the petitioners failed to name the County as a party to the appeal in a timely manner.

The circuit court overruled the demurrer, holding that the petitioners alleged standing by claiming injury to the historic sites located on their property. The court allowed the petitioners to add the County as a party to the appeal, but denied them leave to amend their petition regarding their claimed injuries.

After hearing evidence on the question of standing, the circuit court dismissed the appeal with prejudice on the ground that the petitioners had not established standing because they failed to demonstrate "any actual or imminent injury." The court held that the petitioners' claims of injury merely constituted "abstract distress."

The petitioners appealed from the circuit court's judgment to the Court of Appeals, which reversed the judgment in an unpublished opinion. Crutchfield v. State Water Control Bd., Record No. 1095-01-2 (April 2, 2002). The Court of Appeals remanded the case for a hearing on the merits of the petition,

holding that the petitioners had standing to challenge the Board's issuance of the permit. The Court of Appeals also concluded that the circuit court abused its discretion in refusing to allow the petitioners leave to amend the allegations of their petition, and held that the petitioners' failure to name the County in the original petition did not create a jurisdictional defect in the proceedings.

The Board and the County appealed from the Court of Appeals' judgment. We awarded an appeal based on our determination that the Court of Appeals' decision involves matters of significant precedential value. See Code § 17.1-410(B).

The following facts are relevant to this appeal. The petitioners own an 878-acre tract of land in Hanover County known as "Newcastle Farm" (the farm). The farm is bordered for several miles by the Pamunkey River and contains the remains of the colonial-era town of Newcastle, which was founded in 1738 and is listed as a Virginia Historic Landmark. The farm also includes part of a former plantation, known as Marlbourne, which is listed in the National Historic Landmark Registry.

The County sought the permit to facilitate its planned Totopotomoy Wastewater Treatment Plant. Under the County's plan, treated wastewater will be transported about eight miles from the plant to the Pamunkey River through a buried 36-inch-

3

diameter pipeline, which will cross the petitioners' land. To install the pipeline, the County acquired by condemnation from the petitioners a 50-foot-wide easement passing through the center of their farm. The County also obtained by condemnation an additional acre near the center of the farm's river frontage to construct reaeration and discharge structures necessary for the project. The County's plan will cause the treated wastewater to be discharged from an outfall pipe located on the river bottom about 50 yards upstream from the petitioners' boat ramp, irrigation pump, and "picnic-swimming area."

In considering the County's permit application, the Board held a public hearing during which the petitioners voiced their objections to the proposed project. The petitioners also submitted written comments in opposition to the project.

In April 1999, the Board granted the County's permit request. The petitioners timely filed a notice of appeal and petition for appeal in the circuit court. In their petition for appeal, they alleged that the Board's decision would result in the "effective termination of existing beneficial uses of the Pamunkey River for recreation."

The petitioners attached as an exhibit to their petition a letter they had submitted to the DEQ as part of the "public comment" process. In the letter, the petitioners alleged that the proposed discharge system would interfere with existing

4

recreational uses of the river.  The petitioners also stated in the letter that several people have used "the area immediately downstream from the proposed discharge [site] for swimming for many years.  Those using this area are not limited to the property owners."  Additionally, the petitioners stated that the farm "contains significant, documented historic resources that would indeed be adversely affected by construction of the proposed discharge pipe, reaeration structure, and outfall."

The circuit court granted the Board's request to depose the petitioners on the issue of their standing to appeal the Board's decision.  In her deposition, Crutchfield testified that she was concerned that installation of the pipeline would adversely affect the historic value of the property and would destroy "relics" and other items of archeological importance. Crutchfield also testified that if the pipeline is installed, she will no longer swim, fish, or canoe in the river, and the enjoyment she derives from camping near the river will be impaired.

In his deposition, Broaddus testified that the presence of the discharge structure and pipeline would hinder his enjoyment of the farm's historic resources and recreational amenities. He further testified that the proposed discharge structure would be within sight of the Newcastle Town ruins located on the farm. Broaddus also stated that operation of the discharge facility

and pipeline system will cause him to abandon or decrease the frequency of his recreational activities in the river.

The Board presented evidence of a "cultural resources investigation," which concluded that the County's project would not affect the farm's historic significance. The circuit court also received the results of an "archeological evaluation" indicating that the farm's cultural resources already had been impaired by farming operations, and that the portions of the farm affected by the proposed project did "not contain sufficient integrity to yield any further significant information about the past." After hearing this evidence, the circuit court dismissed the petitioners' appeal, holding that they failed to establish injury to the farm's historic resources and, thus, failed to demonstrate standing to challenge the Board's decision.[1]

On appeal in this Court, the Board first argues that the Court of Appeals erred in affirming the circuit court's decision permitting the petitioners to add the County as a party to the appeal. The Board contends that Rule 2A:4 required the petitioners to serve the County, a necessary party to the

---

[1] In reaching this conclusion, the circuit court did not consider the petitioners' allegations and evidence regarding injury to their recreational interests based on its earlier holding that the original petition failed to allege injury to those interests.

appeal, with a copy of their petition at the time it was filed, and that the petitioners' failure to do so created a jurisdictional defect in the proceedings.  We disagree with the conclusion urged by the Board.

The petitioner's appeal to the circuit court was based on the Administrative Process Act (the Act), Code §§ 2.2-4000 through -4033, which provides that an appeal of a decision by the Board must be brought "in the manner provided by the rules of the Supreme Court of Virginia."  Code § 2.2-4026.  Such appeals brought under the Act are governed by Part 2A of the Rules of this Court.  See Rule 2A:1; Virginia Ret. Sys. v. Avery, 262 Va. 538, 540-42, 551 S.E.2d 612, 613-14 (2001).

Because the petitioners' notice of appeal and original petition for appeal were timely filed within the 30-day time periods specified in Rules 2A:2 and 2A:4, the circuit court had jurisdiction over the subject of the appeal.[2]  See id. at 542, 551 S.E.2d at 614; see also Occoquan Land Dev. Corp. v. Cooper, 239 Va. 363, 366-67, 389 S.E.2d 464, 466 (1990).  The petitioners' failure to have a copy of the petition served on

---

[2] We do not address any other requirements of Rule 2A:2 pertaining to the petitioners' notice of appeal because the County and the Board did not challenge the petitioners' compliance with this Rule either in the circuit court or in their brief filed with this Court.

7

the County did not divest the court of this jurisdiction.  See Avery, 262 Va. at 542, 551 S.E.2d at 614.

The Board incorrectly asserts that the language of Rule 2A:4(a) precluded the circuit court from permitting the County to be added as a party in the case after expiration of the 30-day time period for filing the petition.  This provision states:

> Within 30 days after the filing of the notice of appeal, the appellant shall file his petition for appeal with the clerk of the circuit court named in the first notice of appeal to be filed.  Such filing shall include all steps . . . to cause a copy of the petition to be served (as in the case of a bill of complaint in equity) on the agency secretary and on every other party.

Although the plain language of this provision required the petitioners to serve a copy of their original petition on the County, their failure to do so did not prevent the circuit court from permitting them to amend their petition at a later date to add the County as a party.  The contrary argument advanced by the Board would improperly transform the service of process provisions of Rule 2A:4 into a jurisdictional requirement mandating dismissal of the appeal in the circuit court.  See Avery, 262 Va. at 542, 551 S.E.2d at 614.  We decline to apply Rule 2A:4 in this manner in the absence of language in the Rule compelling such a result.  Thus, we conclude that the circuit court's decision permitting the County to be added as a party to the appeal was a matter subject to the court's discretionary

8

authority.  See Browning-Ferris Indus. of S. Atl., Inc. v. Residents Involved in Saving the Env't, Inc., 254 Va. 278, 282-83, 492 S.E.2d 431, 433-34 (1997).

The present record supports this discretionary determination.  The County, as the entity granted the discharge permit, was a necessary party in the case.  Id. at 282, 492 S.E.2d at 433-34; see Asch v. Friends of the Cmty. of Mount Vernon Yacht Club, 251 Va. 89, 90-91, 465 S.E.2d 817, 818 (1996).  Thus, the circuit court could not determine the merits of the appeal and render a valid judgment in the case unless the County was added as a party.  Atkisson v. Wexford Assocs., 254 Va. 449, 455, 493 S.E.2d 524, 527 (1997); Asch, 251 Va. at 91, 465 S.E.2d at 818; Schultz v. Schultz, 250 Va. 121, 124, 458 S.E.2d 458, 460 (1995).  Moreover, we observe that the County did not object to being added as a party in the petitioners' appeal.  Accordingly, we conclude that the Court of Appeals did not err in affirming the circuit court's decision permitting the County to be added as a party in the case.

We next consider whether the Court of Appeals erred in concluding that the circuit court abused its discretion in denying the petitioners leave to amend the allegations of their original petition.  The Board asserts that because Rule 2A:4 required that the original petition state the reasons why the petitioners contended the Board's decision was unlawful, the

9

circuit court did not have authority to allow amendment of the petition to state a "new" ground of injury, namely, injury to the petitioners' recreational use of the farm and the river.

We find no merit in the Board's assertion that the original petition and letter exhibit failed to allege injury to the petitioners' recreational use of the farm and the river.  In the letter attached to their original petition, the petitioners alleged that the proposed discharge of wastewater will interfere with existing uses of the river.  In that letter, the petitioners discussed the recreational use, including swimming, of the area immediately downstream from the proposed discharge site, and stated that "[t]hose using this area are not limited to the property owners."

A fair inference from these statements is that the petitioners, who are the property owners, use the river and their adjacent property for recreational purposes.  Therefore, we are not presented with an issue whether Rule 2A:4 precludes a petitioner from amending a petition to add a different allegation of injury, and we limit our consideration to the issue whether the circuit court abused its discretion in denying the petitioners leave to amend their petition regarding their original claims of injury.

We observe that the provisions of Rule 2A:4 do not prevent a circuit court from exercising its discretion either to grant

or deny a request to amend a timely filed petition for appeal. However, like any other decision submitted to a circuit court's discretion, the refusal to allow such amendments must be supported by the record.

Here, the record shows that this was the petitioners' first request to amend the allegations of their petition, and the proposed amendments did not add any new claims of injury. In addition, the record does not indicate that the petitioners' request would have caused any delay in the court's consideration of the merits of the appeal or would have resulted in other prejudice to the parties in the case. Based on these factors, we conclude that the Court of Appeals did not err in holding that the circuit court abused its discretion in denying the petitioners' request to amend the allegations of their original petition.

The Board next argues that the Court of Appeals erred in concluding that the petitioners had standing to appeal the Board's decision, and in failing to give deference to the circuit court's "factual finding" that the petitioners failed to demonstrate an actual or imminent injury to the farm's historic resources. We disagree with the Board's arguments.

The requirements for standing to challenge a final decision by the Board are stated in Code § 62.1-44.29, which provides in relevant part:

11

> Any owner aggrieved by, or any person who has participated, in person or by submittal of written comments, in the public comment process related to, a final decision of the Board . . . is entitled to judicial review thereof in accordance with the provisions of the Administrative Process Act . . . if such person meets the standard for obtaining judicial review of a case or controversy pursuant to Article III of the United States Constitution.  A person shall be deemed to meet such standard if (i) such person has suffered an actual or imminent injury which is an invasion of a legally protected interest and which is concrete and particularized; (ii) such injury is fairly traceable to the decision of the Board and not the result of the independent action of some third party not before the court; and (iii) such injury will likely be redressed by a favorable decision by the court.

The language of this statute reflects the holdings of the United States Supreme Court regarding the requirements of standing under the "case" or "controversy" provisions of Article III of the United States Constitution.  Mattaponi Indian Tribe v. Commonwealth, 261 Va. 366, 376, 541 S.E.2d 920, 925 (2001).

The standing provisions of Code § 62.1-44.29 require persons challenging a final decision by the Board to establish that they meet all three enumerated requirements of the statute before a court will consider the merits of their challenge to a governmental action.  These components of Article III standing are not merely requirements of pleading, but must be supported by adequate evidence.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); see Pye v. United States, 269 F.3d 459, 467 (4th Cir. 2001).

12

For purposes of Article III standing, the "injury in fact" that must be established in a case involving a plaintiff's recreational and aesthetic interests is not injury to the environment, but injury to the plaintiff.  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000); Piney Run Pres. Ass'n v. County Comm'rs, 268 F.3d 255, 263 (4th Cir. 2001), cert. denied, 535 U.S. 1077 (2002).  This requirement precludes a plaintiff from alleging a generalized grievance to vindicate an interest shared by the entire public.  Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 156 (4th Cir. 2000); see Lujan, 504 U.S. at 573-74; Committee to Save the Rio Hondo v. Lucero, 102 F.3d 445, 449 (10th Cir. 1996).

A plaintiff must show that the alleged injury will affect him in a personal and individual manner.  Lujan, 504 U.S. at 560 n.1; Gaston Copper Recycling Corp., 204 F.3d at 156.  However, the claimed injury need not be a large one, and an "identifiable trifle" will be sufficient to meet the "injury in fact" requirement.  LaFleur v. Whitman, 300 F.3d 256, 270-71 (2nd Cir. 2002); Gaston Copper Recycling Corp., 204 F.3d at 156; Sierra Club v. Cedar Point Oil Co., 73 F.3d 546, 557 (5th Cir. 1996).  Thus, in "environmental cases," it generally is sufficient if a plaintiff establishes that he uses the affected area, and that he is a person "for whom the aesthetic and recreational values

13

of the area will be lessened" by the defendant's actions. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. at 183 (quoting Sierra Club v. Morton, 405 U.S. 727, 735 (1972)); accord Piney Run Pres. Ass'n, 268 F.3d at 263. Scientific proof of actual harm to an environmental resource is not required to establish standing in such cases. See Gaston Copper Recycling Corp., 204 F.3d at 159-60.

We also note that the location of the petitioners' farm is relevant to the present standing inquiry, because the farm is contiguous to, and touches, the Pamunkey River. So situated, the farm is "[r]iparian land," and the petitioners are "[r]iparian owners" of that land. See Code §§ 62.1-104(5) and –104(6). Riparian owners have the right to make reasonable use of the water flowing past their land, and they have a right to enjoy the recreational and aesthetic advantages that are conferred on such land adjoining a watercourse. Thurston v. City of Portsmouth, 205 Va. 909, 911-12, 140 S.E.2d 678, 680 (1965); Taylor v. Commonwealth, 102 Va. 759, 773, 47 S.E. 875, 880-81 (1904); see Carr v. Kidd, 261 Va. 81, 95, 540 S.E.2d 884, 892-93 (2001).

In accordance with these principles, we conclude that the circuit court erred in its standing determination because the petitioners' allegations and evidence of injury to their

14

recreational interests and use of the river established that they have met all three requirements of Article III standing.[3]

The petitioners have alleged and established an "actual or imminent injury" that is "concrete and particularized" in nature, rather than a mere statement of abstract concern or a general averment of injury. See Code § 62.1-44.29(i). This imminent injury includes injury to their recreational enjoyment of their property and the river's resources to which they have a recognized right as riparian landowners. As stated above, in a letter accompanying their original petition, the petitioners inferentially alleged that they use the area immediately downstream from the proposed discharge site for recreational purposes, including swimming. They also alleged that the proposed discharge of wastewater would interfere with existing recreational uses of the river.

The evidence showed that the County's wastewater treatment project would require the use of a buried three-foot-diameter pipeline placed through the petitioners' land. An outfall facility for treated sewage will be located on the one-acre site taken from the petitioners by condemnation, which is surrounded by the remaining acreage of the farm. The proposed permit will

---

[3] Because we reach this conclusion based solely on these allegations and evidence, we need not consider the sufficiency of the petitioners' additional allegations and evidence concerning injury to the farm's historic resources.

15

allow the County to discharge as much as ten million gallons of treated wastewater daily from this outfall facility into the Pamunkey River only 50 yards upstream from the petitioner's boat ramp, irrigation pump, "swimming hole," and picnic area.

The petitioners both testified that they regularly use the river for swimming, fishing, and boating, and that they would be required either to decrease or discontinue these activities altogether if the County is allowed to operate its discharge facilities under the permit. The petitioners further stated that the outfall location would have an adverse impact on their recreational use of the river, and that their aesthetic enjoyment of the farm and river would be harmed by the daily discharge of treated wastewater into the river.

We also conclude that the petitioners' injuries are "fairly traceable" to the Board's decision to issue the permit to the County and do not result from the actions of a third party not before the court. See Code § 62.1-44.29(ii). Without the permit allowing the discharge of treated wastewater, the injuries that were the subject of the petitioners' testimony would not occur. The County would not be able to discharge the millions of gallons of treated wastewater into the river adjacent to the farm, and would have no need to construct the pipeline through the farm or to build the accompanying discharge structures. Thus, in the absence of the permit, the petitioners' use and enjoyment of the

farm and the river for recreational purposes would remain unaffected.

Finally, we observe that the petitioners' injuries would be "redressed" by a favorable judgment of the circuit court. See Code § 62.1-44.29(iii). The petitioners asked that the circuit court declare the permit "invalid, void and of no effect." As stated above, the petitioners' injuries would not occur in the absence of a permit issued by the Board because the County would be unable to construct the outfall facilities, install the pipeline, and discharge the treated wastewater into the river without a permit authorizing these actions. Accordingly, we conclude that the Court of Appeals did not err in holding that the petitioners have established standing to bring their appeal under the Act in the circuit court.

For these reasons, we will affirm the Court of Appeals' judgment, and will remand the case to the Court of Appeals with direction that the case be remanded to the circuit court for a trial on the merits of the petitioners' claims.

Affirmed.