PETTY, J.,
dissenting.
Despite the majority’s attempt to redefine the question before us, the issue is really quite simple: is a failure to make an indispensable transcript part of the record a jurisdictional defect that requires dismissal of the appeal? Over a quarter of a century ago, our Supreme Court answered that question with clear, unambiguous, and unequivocal language. The Court said,
[W]e must dismiss the writ as improvidently awarded. We take the occasion ... to reiterate the jurisdictional nature *364 of [former] Rule 5:9 and to reemphasize the necessity of compliance with its mandatory requirements.
* * * % * *
These are simple, easily understood rule provisions. But they are jurisdictional, and failure to comply therewith will result ... in dismissal, either before or after appeal is awarded. We dislike dismissing appeals for jurisdictional defects even where, as here, we would likely affirm the judgment of the trial court. Dismissal is especially unpalatable, however, where the correctness of a ruling below is apparent.
Towler v. Commonwealth, 216 Va. 533, 534-35, 221 S.E.2d 119, 120-21 (1976) (emphasis added).
In a sweeping departure from this and other case law acknowledging the jurisdictional nature of certain rules, the majority proclaims that “a rule of court cannot convey or limit jurisdiction.” Supra at 357, 693 S.E.2d at 768. Going on to explain why that statement is consistent with the Supreme Court’s holding to the contrary, the majority apologetically notes that the Supreme Court’s “usage of ‘jurisdictional’ [when discussing these rules] is simply another example of its use of this term as inartful shorthand for what in reality is more accurately described as a mandatory ‘claims-processing rule.’ ” Supra at 360, 693 S.E.2d at 770. What that Court really meant to say, according to the majority, is that the rules are simply “emphatic time prescriptions ... designed to superintend and facilitate the orderly and prompt resolution and disposition of matters before the courts of the Commonwealth.” Supra at 362, 693 S.E.2d at 771. To the contrary, I believe that the Supreme Court’s use of the term jurisdiction in Towler was both deliberate and fully consistent with its definition of that term in Ghameshlouy v. Commonwealth, 279 Va. 379, 388-89, 689 S.E.2d 698, 702-03 (2010), and Porter v. Commonwealth, 276 Va. 203, 228, 661 S.E.2d 415, 426 (2008). I also believe that unless and until the Supreme Court makes it clear that Towler, and the similar cases discussed below, are no longer *365 controlling precedent, we are bound to follow them. Therefore, I dissent.
Historically, this Court has routinely dismissed cases for the failure to file an indispensable transcript.[9] See Mitchell v. O'Brien, No. 1548-06-4 (Va.Ct.App. Mar. 19, 2007); Smith v. Commonwealth, 32 Va.App. 766, 531 S.E.2d 11 (2000); Price v. Price, 17 Va.App. 105, 435 S.E.2d 652 (1993); Clary v. Clary, 15 Va.App. 598, 425 S.E.2d 821 (1993); Anderson v. Commonwealth, 13 Va.App. 506, 413 S.E.2d 75 (1992); Williams v. Commonwealth, 7 Va.App. 516, 375 S.E.2d 364 (1988); Bunton v. Commonwealth, 6 Va.App. 557, 370 S.E.2d 470 (1988); Holley v. City of Newport News, 6 Va.App. 567, 370 S.E.2d 320 (1988); Jordan v. Price, 3 Va.App. 672, 353 S.E.2d 168 (1987); Turner v. Commonwealth, 2 Va.App. 96, 341 S.E.2d 400 (1986); Barrett v. Barrett, 1 Va.App. 378, 339 S.E.2d 208 (1986). However, since Jay v. Commonwealth, 275 Va. 510, 659 S.E.2d 311 (2008), we no longer dismiss these cases.[10] Subsequent to Jay, we have held that the underlying issue to which the indispensable transcript related was waived, resulting in a denial of the petition for appeal,[11] an affirmance,[12] or, in some cases, a summary affirmance.[13]
*366 The majority concedes that Jay applied only to Rule 5A:20(e), but nonetheless expands Jay’s application beyond its terms because it “see[s] no rational reason why this principle should not also apply to Rule 5A:8.” Supra at 356, 693 S.E.2d at 768. I disagree. In fact, I see many rational reasons why this principle should be limited to the context of Jay’s ratio decidendi.
In Jay, our Supreme Court reversed a decision of this Court where this Court dismissed an appeal for failing to comply with Rule 5A:20(e). Jay, 275 Va. at 520, 659 S.E.2d at 317. The Supreme Court concluded that dismissal is an appropriate remedy only when the violation of a Rule is jurisdictional. Id. at 517, 659 S.E.2d at 315. The Court stated that “[b]y dismissing rather than denying the appeals, the Court of Appeals rendered the requirements of Rule 5A:20(e) jurisdictional.” Id. (emphasis in original). The Court held that it was error to dismiss the appeal and concluded that Rule 5A:20(e) is not jurisdictional. The Court went on to suggest that the appropriate remedy for the failure to comply with that Rule is to “treat [the] question presented as waived” and deny the petition for appeal, or, if the petition for appeal had already been granted, affirm. Id. at 520, 659 S.E.2d at 317. In the alternative, the Court also suggested that “the Court of Appeals may ... require an appellant to re-submit the petition for appeal or opening brief ...” or, if the failure to strictly adhere to the Rule was insignificant, decide the case on its merits. Id.
The Supreme Court’s only holding in Jay was that the Court of Appeals erred by dismissing for failure to comply with a non-jurisdictional Rule.[14] Jay, then, requires us not to *367 assume that all rules are non-jurisdictional, as the majority clearly does, but to “adhere to this distinction between jurisdictional and non-jurisdictional rule requirements____” 275 Va. at 518, 659 S.E.2d at 315. Such an admonition requires us to consider each Rule and its contents individually to determine whether it is, wholly or partially, jurisdictional or non-jurisdictional. Thus, to answer the parties’ ultimate question—what is the appropriate remedy for the failure to timely file an indispensable transcript—we need only answer the question of whether such a failure is jurisdictional.
Like the majority, I begin with the recognition that “ ‘jurisdiction is a word of many, too many, meanings.’ ” Ghameshlouy, 279 Va. at 388, 689 S.E.2d at 702 (quoting Ghameshlouy v. Commonwealth, 54 Va.App. 47, 57, 675 S.E.2d 854, 859 (2009) (Haley, J. dissenting)). Indeed, the Supreme Court has noted that “[jlurisdiction is a term which can engender much confusion because it encompasses a variety of separate and distinct legal concepts.” Porter v. Commonwealth, 276 Va. 203, 228, 661 S.E.2d 415, 426 (2008). Fortunately, the Supreme Court did not end its discussion with such a defeated tone, but rather expressly defined the term so as to guide both the bench and bar toward a greater understanding of such a confusing concept:
The term jurisdiction embraces several concepts including subject matter jurisdiction, which is the authority granted through constitution or statute to adjudicate a class of cases or controversies; territorial jurisdiction, that is, authority over persons, things, or occurrences located in a defined geographic area; notice jurisdiction, or effective notice to a party or if the proceeding is in rem seizure of a res; and *368 “the other conditions of fact must exist which are demanded by the unwritten or statute law as the prerequisites of the authority of the court to proceed to judgment or decree.”
Id. (emphasis added) (quoting Farant Inv. Corp. v. Francis, 138 Va. 417, 427-28, 122 S.E. 141, 144 (1924)); accord Ghameshlouy, 279 Va. at 389, 689 S.E.2d at 703 (referring to each type of jurisdiction listed above as an element of a court’s “ ‘active jurisdiction’ ” (quoting Bd. of Supervisors v. Bd. of Zoning Appeals, 271 Va. 336, 343-44, 626 S.E.2d 374, 379 (2006))). The distinctions between these types of “jurisdiction” are far more than an academic exercise because our Supreme Court has mandated certain practical differences among them.
“Jurisdiction ... is the power to adjudicate a case upon the merits and dispose of it as justice may require.” Bd. of Supervisors, 271 Va. at 343, 626 S.E.2d at 378 (quoting Shelton v. Sydnor, 126 Va. 625, 629, 102 S.E. 83, 85 (1920)) (alterations in original). The Supreme Court has parsed the term “jurisdiction” into two concepts: potential and active jurisdiction. Ghameshlouy, 279 Va. at 388-89, 689 S.E.2d at 702-03. Potential jurisdiction is subject matter jurisdiction, which “is the authority granted to [the court] by constitution or statute over a specified class of cases or controversies ...”[15] Id. at 388, 689 S.E.2d at 702. However, potential jurisdiction alone is insufficient to provide a court the power to *369 adjudicate a case on the merits. A court’s potential jurisdiction “becomes ‘active’ jurisdiction” when all of the following elements are present: subject matter jurisdiction, territorial jurisdiction, notice jurisdiction, and authority jurisdiction. Id. at 388-89, 689 S.E.2d at 702-03; accord Bd. of Supervisors, 271 Va. at 343, 626 S.E.2d at 378 (naming these four types of jurisdiction as elements of a court’s active jurisdiction); Farant Inv. Corp., 138 Va. at 427, 122 S.E. at 144 (calling these types of jurisdiction “four essential requisites to confer upon a court ‘active jurisdiction’ ”).
Neither party has argued that we lack subject matter jurisdiction, and it would certainly be a futile exercise to do so. Our Constitution grants the General Assembly “the power to determine the original and appellate jurisdiction of the courts of the Commonwealth.” Va. Const, art. VI, § 1. And, the General Assembly exercised this constitutional power by enacting Code § 17.1-406(A)(i), which clearly grants to this Court appellate subject matter jurisdiction over “any final conviction in a circuit court of a traffic infraction or a crime----” Unquestionably, therefore, this Court has subject matter jurisdiction over this appeal.
Thus, like Ghameshlouy, I am not concerned with our potential jurisdiction, which is subject matter jurisdiction, or, the statutory authority of this Court to consider the subject matter of this appeal. 279 Va. at 389, 689 S.E.2d at 703. Nor am I concerned with our personal jurisdiction over the parties. Subject matter jurisdiction and personal jurisdiction, however, *370 do not necessarily equate to the requisite active jurisdiction to decide the case. Ghameshlouy, 279 Va. at 388-89, 689 S.E.2d at 702-03. This Court must also have the authority to convert our potential subject matter jurisdiction into active jurisdiction, or, put differently, we must have the authority to exercise our subject matter jurisdiction. Id. Without this “active jurisdiction,” this Court is without “power to adjudicate [this] case upon the merits.”[16] Bd. of Supervisors, 271 Va. at 343, 626 S.E.2d at 379.
This authority to exercise subject matter jurisdiction is a completely distinct and different jurisdictional concept. Nelson v. Warden, 262 Va. 276, 281, 552 S.E.2d 73, 75 (2001); see also Mohamed v. Commonwealth, 56 Va.App. 95, 98-99, 691 S.E.2d 513, 514-15 (2010). It “is commonly described as those ‘conditions of fact [that] must exist which are demanded by the unwritten or statute law as the prerequisites of the authority of the court to proceed to judgment or decree.’ ” Mohamed, 56 Va.App. at 101, 691 S.E.2d at 516 (quoting Porter, 276 Va. at 228, 661 S.E.2d at 426) (emphasis added). Unlike subject matter jurisdiction, which originates in a constitution or stat *371 ute, these conditions of fact often arise from “the unwritten or the statute law.” Id. The fact that a rule falls within this “authority jurisdiction” as opposed to “subject matter jurisdiction” does not mean that the rule is not jurisdictional. On the contrary, a rule that limits this Court’s authority to proceed to a decree is by definition jurisdictional.
Our Constitution has specifically delegated to our Supreme Court the “authority to make rules governing the course of appeals and the practice and procedures to be used in the courts of the Commonwealth, but such rules shall not be in conflict with the general law as the same shall, from time to time, be established by the General Assembly.” Va. Const, art. VI, § 5. Thus, the Constitution provides for both the Supreme Court and the General Assembly to promulgate rules to govern the courts of the Commonwealth. As such, the Supreme Court engages in a quasi-legislative function by promulgating these rules much in the same way that an executive agency exercises a quasi-legislative function in promulgating rules and regulations pursuant to the Virginia Administrative Process Act. Thus, to the extent that the Supreme Court’s rules do not conflict with those established by the General Assembly, those rules carry the force and effect of law.
The General Assembly has enacted numerous general laws, and the Rules of the Supreme Court are consistent with those laws. See Code § 17.1-100 through 17.1-629. But, in the absence of legislation from the General Assembly, the responsibility for “making rules governing the course of appeals” rests predominantly with the Supreme Court. Indeed, the General Assembly has also delegated to our Supreme Court the authority to “make general regulations for the practice in all courts of the Commonwealth,” including “a system of rules of practice----”[17] Code § 8.01-3(A). This delegation of rule-making authority is in addition to the Supreme Court’s consti *372 tutional authority. If the General Assembly disagrees with one of these rules, it “may, from time to time, by the enactment of a general law, modify, or annul any rules adopted” by the Supreme Court. Code § 8.01—3(D); see also Va. Const, art. VI, § 5; Commonwealth v. Smith, 263 Va. 13, 18, 557 S.E.2d 223, 226 (2002) (stating that “[t]he General Assembly has implicitly modified Rule 3A:6(b)” by enacting Code § 18.2-31(8)). Essentially, both the Constitution and the General Assembly have delegated rulemaking authority to the Supreme Court and has allowed it to limit the authority of the courts to act in certain situations.
The majority contends that a rule of court cannot, in any circumstance, convey or limit jurisdiction. However, denying a rule jurisdictional character has never been based on the erroneous assumption that a rule can never be jurisdictional. See State Water Control Bd. v. Crutchfield, 265 Va. 416, 424, 578 S.E.2d 762, 766 (2003). Indeed, no decision in our jurisprudence has ever established the majority’s “basic premise.” Rather, the analysis has always centered on the precise language of the specific rule in question. Id. In State Water Control Board, the Supreme Court concluded that Rule 2A:4 is not jurisdictional because of the “absence of language in the Rule compelling such a result.” Id. This reinforces the view that a rule can limit the jurisdiction of a Court if the language in the rule compels such a result.
For example, Rule 1:1 limits the circuit court’s jurisdiction by prescribing that “[a]ll final judgments, orders, and decrees ... shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer.” Recently, the Supreme Court stated that “the provisions of Rule 1:1 are mandatory in order to assure the certainty and stability that the finality of judgments brings. Once a final judgment has *373 been entered and the twenty-one day time period of Rule 1:1 has expired, the trial court is thereafter without jurisdiction in the case.” City of Suffolk v. Lummis Gin Company, 278 Va. 270, 276, 683 S.E.2d 549, 552 (2009) (citing Super Fresh Food Markets v. Ruffin, 263 Va. 555, 561 S.E.2d 734 (2002)); accord In Re: Commonwealth of Virginia, 278 Va. 1, 38, 677 S.E.2d 236, 255-56 (2009); Upper Occoquan Sewage Auth. v. Blake Constr. Co., 275 Va. 41, 60, 655 S.E.2d 10, 21 (2008); Safrin v. Travaini Pumps USA Inc., 269 Va. 412, 418, 611 S.E.2d 352, 355 (2005); James ex rel. Duncan v. James, 263 Va. 474, 484, 562 S.E.2d 133, 139 (2002); Super Fresh Food Markets, 263 Va. at 563, 561 S.E.2d at 738-39; Singh v. Mooney, 261 Va. 48, 54, 541 S.E.2d 549, 552 (2001); Davis v. Mullins, 251 Va. 141, 149, 466 S.E.2d 90, 94 (1996); Smith v. Stanaway, 242 Va. 286, 289, 410 S.E.2d 610, 612 (1991); School Bd. v. Caudill Rowlett Scott, 237 Va. 550, 554, 379 S.E.2d 319, 321 (1989); Rook v. Rook, 233 Va. 92, 95, 353 S.E.2d 756, 758 (1987); Va. Dept. Carr. v. Crowley, 227 Va. 254, 264, 316 S.E.2d 439, 444 (1984); In Re: Dept, of Corrections, 222 Va. 454, 465, 281 S.E.2d 857, 863 (1981); Prohm v. Anderson, 220 Va. 74, 255 S.E.2d 491 (1979).
The majority disregards this long line of cases by simply calling the Supreme Court’s use of the word “jurisdiction” an “inartful shorthand for what is more accurately described as a mandatory ‘claims-processing rule’____” Supra at 360, 693 S.E.2d at 770. The majority continues in a lengthy footnote to recognize what it perceives as “facially irreconcilable precedent from our Supreme Court” by citing Black’s Law Dictionary and two Supreme Court of Virginia cases[18] that stand for the same proposition; that is, that the failure to file an indispensable transcript is jurisdictional. Supra at 360-61 n. 7, 693 S.E.2d at 770 n. 7. In presuming that the Supreme Court has “taken steps toward refining the concept of jurisdiction,” id., the majority ignores the broad definition of ju *374 risdiction set out in Ghameshlouy and Porter. Indeed, the Supreme Court reinforced the proposition that Rule 1:1 is jurisdictional in Ghameshlouy when it stated that “the circuit court’s jurisdiction over the case extends 21 days beyond the entry of the final order.” 279 Va. at 390, 689 S.E.2d at 703 (citing Rule 1:1) (emphasis added).
Nonetheless, the majority concludes that Rule 1:1 is not jurisdictional and the Supreme Court’s use of that term in Ghameshlouy was inartful when it states in footnote 7, “Rule 1:1 does not limit a court’s ‘jurisdiction,’ but rather limits the power of a court, which already has jurisdiction, to modify its final order more than 21 days after its entry.” Supra at 360 n. 7, 693 S.E.2d at 770 n. 7 (emphasis in original). However, as stated above, a court’s active jurisdiction includes “ ‘other conditions of fact [that] must exist which are demanded by the unwritten or statute law as the prerequisites of the authority of the court to proceed to judgment or decree.’ ” Porter, 276 Va. at 228, 661 S.E.2d at 426 (quoting Farant Inv. Corp., 138 Va. at 427-28, 122 S.E. at 144) (emphasis added). “These ‘conditions of fact’ can be affected by various factors, including ... the passage of time.” Mohamed, 56 Va.App. at 101, 691 S.E.2d at 516 (citing Cook v. Commonwealth, 211 Va. 290, 293, 176 S.E.2d 815, 817 (1970)). Clearly, the fact that must exist as a prerequisite to the trial court’s authority to proceed to judgment or decree is whether the modification occurred within 21 days after the entry of the final order. Thus, the only conclusion I can reach is that Rule 1:1 is jurisdictional.[19]
Further, the majority cites to both Nelson, 262 Va. at 278, 552 S.E.2d at 74, and David Moore v. Commonwealth, 259 Va. 431, 437, 527 S.E.2d 406, 409 (2000), as evidence that our Supreme Court has “taken steps to refin[e] the concept of ‘jurisdiction.’ ” Nelson involved a Baker claim[20] that was con *375 trolled by the rule established one year earlier in Moore. In Moore, the Court held that the statute limited the trial court’s authority to proceed to judgment. 259 Va. at 440, 527 S.E.2d at 411. Because the limitation on the court’s authority limited its jurisdiction, the Court held that the failure to comply rendered the judgment void. Id. In Nelson, the Supreme Court admitted its error in Moore and concluded that “the statutory requirement of notice to parents was not jurisdictional but procedural in nature, that a failure to notify parents could be waived by a failure to object, and correspondingly, that a failure to comply with the requirement rendered subsequent convictions voidable and not void.” 262 Va. at 285, 552 S.E.2d at 77. Essentially, the Supreme Court concluded that the statute did not limit the trial court’s authority to proceed to judgment at all, but rather merely imposes a procedural requirement. Thus, the notice requirement was not jurisdictional.
The majority overlooks the Supreme Court’s discussion of the language used in the specific statute, which was dispositive in that case. In that discussion, the Supreme Court acknowledged that in 1977, the General Assembly removed language from the statute that essentially made it jurisdictional: “in no case shall the hearing proceed until the parent or parents of the child ... have been notified.” Id. at 283, 552 S.E.2d at 76 (emphasis in original). The new language merely required that “the juvenile court shall give parents notice in writing of a transfer hearing,” and the Supreme Court concluded that this language was procedural and not jurisdictional. Id. at 283, 552 S.E.2d at 77. The Supreme Court stated in Nelson that the new language did not “remotely suggest[ ] an intention to re-institute a jurisdictional requirement in the notice provisions of the juvenile statutes.” Id. Thus, Nelson concluded that the notice requirement was not jurisdictional simply because of the absence of language in the statute compelling such a result. Cf. State Water Control Bd., 265 Va. at 424, 578 *376 S.E.2d at 766 (concluding that Rule 2A:4 is not jurisdictional because of the “absence of language in the Rule compelling such a result”).
Thus, I am unwilling to cast off such a well-established legal principle that the trial court is divested of jurisdiction over a case after twenty-one days. This limitation on the circuit court’s jurisdiction is solely rule-based and has no statutory foundation. As a result, I disagree with the majority’s “basic premise ... that a rule of court cannot create or limit a court’s jurisdiction____” Supra at 360, 693 S.E.2d at 770.
Applying these principles to the case at hand, it is imperative to note that the jurisdictional nature of Rule 5A:8 is not an issue of first impression. Both this Court and our Supreme Court have held repeatedly that failure to file an indispensable transcript will result in the dismissal of an appeal. In Dudley v. Florence Drug Corporation, 204 Va. 533, 535,132 S.E.2d 465, 466-67 (1963), the appellant tendered the transcript to the trial court six days after the sixty-day deadline set forth in Rule 5:1, § 3(e) and (f), which was the precursor to former Rule 5:9 and current Rules 5:11 and 5A:8.[21] Thus, the transcript was not properly before the Court. The Court stated that “Rule 5:1, § 3(e) and (f) is mandatory *377 and jurisdictional and a failure to comply with it is fatal to an appeal.” Id. at 535, 132 S.E.2d at 467 (emphasis added). The Court reasoned that the “plaintiff has flagrantly violated the mandatory requirements of Rule 5:1, § 3(e) and (f)” and that “[s]uch a lack of compliance with the Rule is fatal to the jurisdiction of this Court.” Id. (emphasis added). The Court then sustained the defendant’s motion to dismiss the writ of error and dismissed the writ.[22] Id.
Similarly, in Towler, the appellant filed the transcript with the court; however, he failed to accompany it with “any notice, certificate of service, or acceptance of service,” which was required by former Rule 5:9. Towler, 216 Va. at 534, 221 S.E.2d at 120. Our Supreme Court stated that because of the appellant’s failure to abide by former Rule 5:9, the transcript was not made a part of the record. Id. Then, the Court stated that the transcript was indispensable to disposition of the issues before it and concluded that it “must dismiss the writ as improvidently granted.” Id. (emphasis added). The Court stated:
[w]e take the occasion ... to reiterate the jurisdictional nature of [former] Rule 5:9 and to reemphasize the necessity of compliance with its mandatory provisions. We do this because we have observed far too many violations of this rule; and we lament the numerous instances in which we have been forced to dismiss appeals because of failure to observe the rule’s requirements.
Id. at 534, 221 S.E.2d at 121 (emphasis added). After explaining the requirements of former Rule 5:9(b), the Court stated that “[t]hese are simple, easily understood rule provisions. *378 But they are jurisdictional, and failure to comply therewith will result, as in the present case, in dismissal, either before or after appeal is awarded.” Id. at 535, 221 S.E.2d at 121 (emphasis added).
This Court has also enunciated these principles repeatedly throughout its jurisprudence. See Smith, 32 Va.App. at 771-72, 531 S.E.2d at 14-15; Clary, 15 Va.App. at 601, 425 S.E.2d at 822; Anderson, 13 Va.App. at 509, 413 S.E.2d at 77; Williams, 7 Va.App. at 519, 375 S.E.2d at 366; Bunton, 6 Va.App. at 561, 370 S.E.2d at 472; Holley, 6 Va.App. at 568-69, 370 S.E.2d at 321; Jordan, 3 Va.App. at 673, 353 S.E.2d at 168; Turner, 2 Va.App. at 99, 341 S.E.2d at 402; Barrett, 1 Va.App. at 380, 339 S.E.2d at 209-10. For example, in Barrett, the Court stated that the failure to comply with Rule 5A:8 “is jurisdictional and the failure to comply therewith will result in dismissal.” Barrett, 1 Va.App. at 380, 339 S.E.2d at 210 (citing Towler, 216 Va. 533, 221 S.E.2d 119) (emphasis added). The Court went on to state that “[t]he transcript or written statement is indispensable to a disposition of this appeal and is jurisdictional. There is no rule, statute or rationale that allows us to decide otherwise. This case is, therefore, dismissed.” Id. (emphasis added).
When, however, the issues on appeal may be decided without the transcript (i.e. the transcript is not indispensable), its absence does not limit our jurisdiction to decide those issues that do not require a transcript. We have recognized that there is no mandate in our Rules that requires either party to file a transcript, Wolfe v. Commonwealth, 6 Va.App. 640, 643, 371 S.E.2d 314, 315 (1988), and “[t]he absence or late filing of the transcript ... does nothing to diminish our jurisdiction.” Turner, 2 Va.App. at 99, 341 S.E.2d at 402. We explained that statement in Turner and limited its application to those issues for which the transcript was not indispensable. Id. In other words, “[i]f the record on appeal is sufficient in the absence of the transcript to determine the merits of the appellant’s allegations, [then] we are free to proceed to hear the case.” Id.; see also Wolfe, 6 Va.App. at 643, 371 S.E.2d at 315-16.
*379 “The importance of the record is obvious, for it is axiomatic that an appellate court’s review of the case is limited to the record on appeal.” Turner, 2 Va.App. at 99, 341 S.E.2d at 402. A transcript is indispensable when, in the absence of a transcript, the record is not “complete to the degree necessary to adjudicate the appeal,” id., “determine the merits of the appellant’s allegations,” id., or “permit resolution of appellate issues.” Rule 5A:8(b). Thus, it is clear that if the transcript is indispensable, then “any assignments of error affected by the omission shall not be considered.” Rule 5A:8(b) (emphasis added).
In Turner, this Court determined that the transcript was indispensable and concluded that there was “no alternative but to dismiss the case for failure to comply with mandatory rule provisions.” Turner, 2 Va.App. at 100, 341 S.E.2d at 402. We reached the same conclusion in Anderson, 13 Va.App. at 510, 413 S.E.2d at 78, where we said “[bjecause the statement of facts is indispensable to a determination of the question presented, we must dismiss the appeal.” In contrast, however, we reached the merits in Wolfe because “the issue presented ... [was] capable of resolution without a transcript.” Wolfe, 6 Va.App. at 644, 371 S.E.2d at 316. We noted that the “decision to review [that] case without a trial transcript or statement of facts is the rare exception rather than the general rule. The trial transcript usually is indispensable.” Id. Thus, cases where a transcript is not filed are usually dismissed.
Contrary to the majority’s position, the Supreme Court’s opinion in Jay does nothing to overturn Towler, Fearon, Crum, Dudley, Smith, Clary, Anderson, Williams, Bunton, Holley, Jordan^ Turner, or Barrett. While our post-Jay application of Rule 5A:8 may have changed from dismissing to affirming cases affected by this issue, our jurisprudence does not support that practice. Indeed, just last year, our Supreme Court, in an unpublished order,[23] held that this Court did not *380 err in dismissing an appeal “on the ground that a transcript or written statement of facts was ‘indispensable to a determination of the questions presented.’ ”[24] Mitchell v. O’Brien, No. 072633 (Va. Feb. 13, 2009).
Further, I note several important distinctions between Rules 5A:20 and 5A:8. First, unlike Rule 5A:20, Rule 5A:8 expressly limits our authority to act. “When the appellant fails to ensure that the record contains transcripts or a written statement of facts necessary to permit resolution of appellate issues, any assignments of error affected by the omission shall not be considered.” Rule 5A:8 (emphasis added). Rule 5A:20 merely states that “the opening brief of appellant shall contain” a list of items, a phrase that does not limit our authority to proceed to judgment or decree. Second, a violation of Rule 5A:8, unlike a violation of Rule 5A:20, cannot be corrected or overlooked. Once the time limit for filing the transcript with the trial court has expired, it cannot thereafter be extended. Jordan, 3 Va.App. 672, 353 S.E.2d 168.[25] The Supreme Court *381 noted in Jay that this Court could take actions to address a violation of Rule 5A:20, such as requiring an appellant to refile a defective brief. No such corrective measures are available to address a failure to file an indispensable transcript.
Thus, I would hold that when an indispensable transcript is not made part of the record, this Court lacks both the authority and the ability to address the issues raised. Therefore, I would conclude that, if the transcript is indispensable, the proper remedy for failing to file such transcript is dismissal. Thus, to determine whether the fate of this particular appeal is a dismissal, affirmance, or reversal, I would next decide whether the untimely-filed suppression-hearing transcript is indispensable to our ability to decide this case.
The only question presented that Smith raises on the merits of this case is whether the trial judge erred in denying his motion to suppress an out-of-court identification because the circumstances were unduly suggestive. In Smith’s motion to suppress he argued “that complete, neutral, and unbiased photographic lineups were not provided to the alleged victim” and he gave notice that he would “move to exclude all identifying evidence from admission into evidence at his subsequent trial.” That is the only information in the record regarding the victim’s identification of Smith. The record simply included the typical court documents such as the indictment, motion to suppress, plea agreement, conviction order, sentencing order, notice of appeal, Smith’s motion to dismiss, and the transcript from the sentencing hearing. In the absence of the suppression-hearing transcript, the record is not complete to the degree necessary to adjudicate the appeal and determine the merits of the appellant’s allegations. Therefore, I would conclude that the suppression-hearing transcript is indispensable to the resolution of Smith’s question presented.
Accordingly, I would dismiss Smith’s appeal, thereby allowing his convictions to stand.

. While this dissent refers to indispensable transcripts, the following analysis applies equally to an indispensable written statement of facts. Rule 5A:8(b). I also note that, contrary to the majority's opinion, nothing in this dissent would require this Court to dismiss any appeal for the mere failure to file a dispensable transcript. To the extent that the majority interprets this dissent to require dismissal in every case where a transcript is not filed, it misstates my position.

. Although the orders we have issued subsequent to Jay have reflected our change in practice, this is the first case in which we have actually been called upon to address the issue.

. Moore v. Everitt, No. 3088-08-3 (Va.Ct.App. Apr. 23, 2009) (unpublished order); Lewis v. Commonwealth, No. 0954-08-1 (Va.Ct.App. Oct. 8, 2008) (unpublished order).

. Shiembob v. Shiembob, 55 Va.App. 234, 246, 685 S.E.2d 192, 198-99 (2009); Mollette v. Roanoke County Dep’t of Soc. Serv., No. 2963-08-3, 2009 WL 1117484 (Va.Ct.App. Apr. 28, 2009).

. Bowser v. Guenard, No. 0024-08-1, 2009 WL 1658158 (Va.Ct.App. June 16, 2009); Brown v. Ketchum, No. 1835-08-4, 2009 WL 167006 *366 (Va.Ct.App. Jan. 27, 2009); Tully v. Commonwealth of Va. Dep’t of Soc. Serv., Div. of Child Support Enforcement, No. 2104-08-4, 2008 WL 5210892 (Va.Ct.App. Dec. 16, 2008).

. The majority states that "[t]he holding in Jay could hardly be clearer, '[b]y dismissing rather than denying the appeals, the Court of Appeals rendered the requirements of Rule 5A:20(e) jurisdictional.’ ” Supra at 355, 693 S.E.2d at 767. I agree that Jay's holding could hardly be *367 clearer, but reading the entire opinion in context, the Court's holding is simply that the Court of Appeals erred in dismissing for a violation of a non-jurisdictional rule. The Supreme Court’s holding rests entirely on its conclusion that Rule 5A:20(e) is not jurisdictional. In contrast, and noted below, the Supreme Court has repeatedly and consistently held that Rule 5A: 8 is jurisdictional and the remedy for a violation is dismissal. Had the Court intended the holding in Jay to overturn this long-standing precedent, I believe it would have explicitly done so.

. The majority contends that "potential jurisdiction” consists of subject matter jurisdiction, territorial jurisdiction, notice jurisdiction, and authority jurisdiction. Supra at 357-59, 693 S.E.2d at 768-69. However, the Supreme Court in Ghameshlouy clearly limited this concept to subject matter jurisdiction. 279 Va. at 388-89, 689 S.E.2d at 702-03. Indeed, this is not a new concept:
The jurisdiction under consideration is what Mr. Lile, in his excellent work above cited, calls "active jurisdiction,” which he defines as "the right to exercise the potential jurisdiction in a given case” (Lile’s Eq. PI. & Pr. sec. 12); and he, in turn, defines “'potential jurisdiction" as “the power granted by the sovereignty creating the court to hear and determine controversies of a given character" (Idem.sec.il) namely, jurisdiction over the subject-matter. And as Mr. Lile also says: "In order, however, that the court thus vested with potential jurisdiction may rightfully exercise the jurisdiction” (i.e., have "active jurisdiction”), "in a particular case, certain conditions of fact must appear— *369 these conditions varying with the character or purpose of the proceeding. These conditions of fact may be demanded either by the settled principles of the unwritten law, or by the mandate of the statute law.”
There are, indeed, four essential requisites to confer upon a court "active jurisdiction,” which may be thus classed, (1) potential jurisdiction, (2) territorial jurisdiction, (3) actual jurisdiction of the subject-matter where the proceeding is in rem, and also of the proper parties where the proceeding is personal, and (4) the other conditions of fact must exist which are demanded by the unwritten or statute law as the prerequisites of the authority of the court to proceed to judgment or decree.
Farant Inv. Corp., 138 Va. at 427-28, 122 S.E. at 144 (emphasis added).

. The majority attempts to draw a distinction between a court’s "power” and "authority." According to the majority, "authority” is jurisdictional, but “power” is not. Thus, the majority states that "a court’s ‘power ’ to actually reach the merits of a case depends upon a party's compliance with any and all mandatory requirements imposed by the rules of court.” Supra at 360, 693 S.E.2d at 769-70 (emphasis added). I see no support for this distinction in our jurisprudence and, further, as noted above, the Supreme Court defined "jurisdiction” in Board of Supervisors as "the power to adjudicate a case upon the merits and dispose of it as justice may require.” 271 Va. at 343, 626 S.E.2d at 378 (quoting Shelton, 126 Va. at 629, 102 S.E. at 85) (emphasis added).
I view a court’s power to adjudicate a case on the merits as an overall description of the concept of jurisdiction including both potential and active jurisdiction. Thus, in order for a court to adjudicate a case on the merits, the court must have subject matter, territorial, notice, and authority jurisdiction. It follows logically, then, that "authority” is a required element of a court’s "power” to proceed on the merits. Where a rule limits a court’s "authority” to proceed to judgment or decree, the court has no "power” to adjudicate the case on the merits. This seems to be consistent with the Supreme Court’s description of jurisdiction in Ghameshlouy, Board of Supervisors, Porter, Nelson v. Warden, 262 Va. 276, 281, 552 S.E.2d 73, 75 (2001), etc.

. More specifically, the General Assembly delegated to
[t]he Supreme Court [the responsibility to] prescribe and publish the initial rules governing practice, procedure, and internal processes for *372 the Court of Appeals designed to achieve the just, speedy, and inexpensive disposition of all litigation in that court consistent with the ends of justice and to maintain uniformity in the law of the Commonwealth.
Code § 17.1-403.

. The majority cites to both Dudley v. Florence Drug Corp., 204 Va. 533, 535, 132 S.E.2d 465, 467 (1963), and Towler, 216 Va. at 535, 221 S.E.2d at 121. Neither of these cases is facially irreconcilable with any Supreme Court precedent that the majority cites nor that I can find.

. Moreover, the majority does not address the fact that the modification, vacation, or suspension of a final order after that twenty-one-day period is void. Crowley, 227 Va. at 261-62, 316 S.E.2d at 443.

. A Baker claim is one that arises from Commonwealth v. Baker, 258 Va. 1, 516 S.E.2d 219 (1999) (per curiam), aff'g Baker v. Common *375 wealth, 28 Va.App. 306, 504 S.E.2d 394 (1998) (holding that the failure to notify a juvenile’s parents of proceedings in juvenile court renders void subsequent criminal convictions in circuit court).

. Rule 5:1, § 3(e) and (f) is similar to Rules 5:11 and 5A:8 in that it provides a procedure for making a transcript or a statement of facts a part of the record. Rule 5:1, § 3(e) and (f) provides as follows:
(e) Oral testimony and other incidents of the trial or hearing transcribed by a reporter, and any written statement of facts, testimony or other incidents of the case become part of the record when delivered to the clerk, if the transcript or statement is signed at the end by counsel for all parties and tendered to the judge within 60 days and signed by the judge within 70 days after final judgment. It shall be forthwith delivered to the clerk who shall certify on it the date he receives it.
(f) Such a transcript or statement not signed by counsel for all parties becomes part of the record when delivered to the clerk, if it is tendered to the judge within 60 days and signed at the end by him within 70 days after final judgment. It shall be forthwith delivered to the clerk who shall certify on it the date he receives it. Counsel tendering the transcript or statement shall give opposing counsel reasonable written notice of the time and place of tendering it and a reasonable opportunity to examine the original or a true copy of it. *377 The signature of the judge, without more, will be deemed to be his certification that counsel had the required notice and opportunity, and that the transcript or statement is authentic. He shall note on it the date it was tendered to him and the date it was signed by him.

. The Supreme Court reached the same result in both Fearon v. Commonwealth, 211 Va. 256, 257, 176 S.E.2d 921, 922 (1970) (dismissing appeal), and Crum v. Udy, 206 Va. 880, 881, 146 S.E.2d 878, 879 (1966) (dismissing appeal), where the appellants failed to comply with Rule 5:1, § 3(e) and (f).

. In Sheets v. Castle, 263 Va. 407, 411, 559 S.E.2d 616, 619 (2002), our Supreme Court stated:
*380 With the exception of cases with procedural defects and the limited number of cases for which appellate review by the Supreme Court of Virginia is dependent upon "a substantial constitutional question as a determinative issue or matters of significant precedential value” (Code §§ 17.1-410 and -411), the refusal of a petition for appeal constitutes a decision on the merits.
And, a “decision on the merits”—including the denial of a petition of appeal—has precedential value, as long as "the grounds upon which the refusal is based are discernible from the four comers of the Court’s order.” Id. at 411-12, 559 S.E.2d at 619. Because I conclude that our Supreme Court’s reasoning for its conclusion that this Court did not err in dismissing the case in Mitchell v. O’Brien, No. 1548-06-4 (Va.Ct.App. Mar. 19, 2007), for failure to timely file an indispensable transcript is apparent from the four comers of their order, I consider it controlling precedent.

. My opinion here is buttressed by the fact that our dismissal of the case in Mitchell v. O’Brien, No. 1548-06-4 (Va.Ct.App. Mar. 19, 2007), was pre-Jay and the Supreme Court’s unpublished order was released post-Jay, Mitchell v. O’Brien, No. 072633 (Va. Feb. 13, 2009).

. The majority also raises the argument that Rule 5A:18 is not jurisdictional in order to support its argument that Rule 5A:8 is not jurisdictional. Of course Rule 5A: 18 is not jurisdictional. It contains an "ends of justice” exception, something that is inconsistent with a jurisdiction *381 al requirement. Rule 5A:8, however, is mandatory, and provides for no exception. Thus, I fail to see the logic in that argument.